O'BOYLE, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 27 — June 23, 1898.*

*Criminal law and practice: Rape: Resistance: Evidence: Corroboration of prosecutrix, when necessary.*

1. To authorize a conviction of rape it must be shown that the woman did not consent to intercourse, but that there was the utmost reluctance and resistance on her part, or that her will was overcome by duress or fear.

2. Mere verbal objections by a female over the age of consent, unaccompanied by any outcry or actual resistance, are not enough to make the acts of the accused rape or an attempt to commit rape.

3. Where the testimony of the prosecutrix bears upon its face evidence of its unreliability, there should be corroboration by other evidence as to the principal facts relied on to constitute the crime.

ERROR to review a judgment of the circuit court for Juneau county: O. B. WYMAN, Circuit Judge. *Reversed.*

O'Boyle vs. The State.

*James O'Boyle*, the plaintiff in error, was tried in the circuit court for Juneau county upon an information charging him with having committed the crime of rape on the person of Annie Stegeman, a female of the age of fifteen years or more, and the jury returned a verdict finding him guilty. The defendant moved to set aside the verdict, and for a new trial; but the court denied the motion, and sentenced him to ten years' imprisonment in the state prison. At the close of the testimony the defendant moved for a dismissal of the action on the ground that the state had failed to make out by proof the offense charged, and had failed to show that any such force was used as was required, under the law, to constitute the crime charged; but the motion was overruled. These rulings were assigned, with others, as error, as well as that the verdict was not sustained by the evidence.

For the plaintiff in error there was a brief by *J. M. Morrow* (*Morrow & Masters* and *Amitto & Smith*, attorneys), and oral argument by *Mr. Morrow* and *Mr. A. H. Smith.*

The *Attorney General*, for the defendant in error.

Pinney, J. The evidence is very voluminous, and it is not practicable to give more than a brief abstract of the more material facts. The complainant, Annie Stegeman, was in the sixteenth year of her age, and at the time of the alleged offense, February 20, 1897, was at service in the family of one Fuhrman, a merchant, in the city of Elroy. She had been sent to the store, and on her way home met Myrtle Smith, an acquaintance, who came with her, and stayed until after supper; and then she took witness down town for a walk, first going to the post office, and Myrtle Smith said, "Come on; let's go down town and take a walk." After a time two boys followed them, and got as far as the corner, and caught hold of their arms, and wanted them to go out for a walk. She testified that she got away from them, and went around to the side door of Raetzman's, and the boys

O'Boyle vs. The State.

got scared and ran away; that then they went up town again, and Myrtle wanted to go into the post office, and witness stood outside. When she came out, there was a fellow standing on the corner, talking to her. It was the defendant. He said they should stop there; that he wanted to take a walk down to Brooklyn. Witness said she did not want to go, and then, with Myrtle, she went up town again, where the latter met her mother, who scolded her and took her back home, and witness ·did not stay there very long. It was about a quarter past 7 by that time. She procured the key of Mrs. Fuhrman, and was going homeward on Main street. She met *O'Boyle*, the defendant, at the railroad crossing, and he pulled her over to the depot. "He said, 'Come, and let's go over to the depot,' and I didn't want to go. I commenced to holler, and then he said, 'Shut up, or he would choke me.' He said I should not holler or else he would choke me. He pulled me over and tore my clothes. He pulled me by the arms." "*Q.* Tell the jury how he used you, in getting you over to the depot? Did he do anything else besides pulling you? *A.* He had his hands over my mouth. He took me to the freight depot. It is just a little ways from the crossing. *Q.* What part of the freight depot did he take you to? *A.*. On the east side. I can't tell how far it was from the north end. I was so scared." The details of the offense, for obvious reasons, are omitted. She testified that she did not know what *O'Boyle* was trying to do to her; thought he was going to kill her; that she did not tell about what happened to her that night to anybody; first told it to Mr. Dithmar, the next Wednesday. "I tried to holler. He had his hands over my mouth so that I couldn't holler." She testified that she never met the defendant before that night. Did not know who he was. Had seen him once on the street. Had never been out walking with him before. *O'Boyle* came from the freight depot. "He said he wanted to take me over to the depot, and I said I didn't

want to go. He asked me why I didn't want to go, and I said because I didn't want to go. This was right close to the houses, and soon after seven o'clock in the evening. Didn't notice whether there was any light in any of the windows on that side of the depot. I didn't look to see if there was anybody near by. I didn't see any one. I did not say anything. He hadn't said anything; not a word, except what little was said at the crossing."

We think that in a legal point of view the evidence is wholly insufficient to sustain the charge of rape, for which the defendant was convicted. There can be no rape of a female, within the age of consent, where there is consent, no matter how reluctantly it be given. The connection must be against her will, and there must be the utmost reluctance and resistance, or her will must be overcome by fear and terror so extreme as to preclude a resistance. The resistance must depend on the surrounding circumstances, and on the relative physical strength of the parties. Mere verbal objections, unaccompanied by any outcry or actual resistance, are not enough to make the acts of the accused rape, or an attempt to commit rape. The allegation of force is to be proved by competent evidence showing either that the person of the woman was violated and her resistance was overcome by physical force, or that her will was overcome by duress or fear. But, before the defendant can be convicted of rape, it must be shown that the woman did not consent to intercourse, but that she used all the resistance in her power under the circumstances up to the time of the intercourse. 19 Am. & Eng. Ency. of Law, 950; *State v. Ward*, 73 Iowa, 532; *Comm. v. McDonald*, 110 Mass. 405. To authorize a conviction of rape, the jury must believe that the offense was accomplished by force, and against the will of the prosecutrix, and that there was the utmost reluctance and resistance on her part, or that her will was overcome by force or fear of the defendant. *Strang v. People*, 24 Mich. 1.

O'Boyle vs. The State.

The radical difficulty with the present case is that the evidence of resistance and want of consent is wholly insufficient to sustain the charge. She testified in a halting, hesitating, and unsatisfactory manner, calculated to create distrust of the truth of the charge made against the defendant. She made no outcry, except perhaps once to call out "Help!" She is not corroborated by any witness as to any material fact of the offense. Where the testimony of the prosecuting witness bears upon its face evidence of its unreliability, to sustain a conviction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime. *Maxfield v. State* (Neb.), 74 N. W. Rep. 403. The evidence in this case, in its general character and effect, to make out the charge relied on, is is not materially different from that in the case of *Bohlmann v. State*, 98 Wis. 617. Her story presents several physical improbabilities, if not impossibilities. There was evidence that there were near by three or four dwellings, a switch light, and a street lamp. It seems wholly unreasonable that a virtuous girl, determined to defend her chastity at all hazards and preserve her honor, situated as she was, could have been compelled to go over to the depot, and upon the platform, in such a public place, and be ravished in the manner she describes, without being able to make an outcry that would arrest attention, and a resistance that might have been effective to defeat the vile purposes of her assailant. The conclusion at which we have arrived, after a careful consideration of the evidence, is that the conviction in question is not warranted by competent or sufficient legal evidence, and that the judgment of the circuit court for Juneau county herein is therefore erroneous and must be reversed, and a new trial had herein according to law.

*By the Court.*— The judgment of the circuit court for Juneau county in this cause is reversed, and the cause remanded to that court with directions to proceed to a new trial thereof

according to law; and to that end it is ordered that the said defendant, *James O'Boyle,* do appear at the term of the circuit court for Juneau county held next after the rendition of this judgment, then and there to stand such new trial for the offense with which he is charged, and to abide the order and judgment of the circuit court in respect thereto.