Wilcox vs. The State.

---

WILCOX, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 20 — April 4, 1899.*

*Criminal law: Assault with intent to commit rape: Evidence.*

In a prosecution of a father for an assault with intent to commit rape upon his daughter, the fact that there was no evidence of injury to the person of the prosecutrix, no outcry when help was at hand, and no complaint until long afterwards, taken in connection with her threats against her father, her ill feeling against him as manifested on the trial, and the evident desire of the whole family to get rid of him, is *held* to throw such doubt upon her story that a conviction based upon her uncorroborated evidence will not be sustained.

ERROR to review a judgment of the circuit court for Pepin county: E. W. HELMS, Circuit Judge. *Reversed.*

*S. G. Gilman,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General,* and oral argument by *R. F. Hamilton,* second assistant attorney general.

BARDEEN, J. The plaintiff in error was tried and found guilty of an assault upon his daughter with intent to commit rape. The only question we need consider is whether the evidence is sufficient to sustain a conviction. The evidence shows a rather low state of morals in defendant's family. The accused was convicted upon the unsupported testimony of the assaulted party. She lived with her parents in the city of Durand, and was sixteen years of age at the time the assault was said to have been committed. It occurred between 3 and 4 o'clock on a bright, sunshiny day in the month of July, 1893. She was alone with her father in the house,—in the kitchen. She says that her father locked one of the doors, darkened the windows, and then took her in his arms, and carried her into the front room, and laid her on the floor. She described his attempt to accomplish his purpose, and then said: "At about that time I heard a rap on the door. He got up, buttoned up his pants, and went to the door. Mr. Nesbit was at the door. He came after the washing my mother was doing." "I remember of hollering once. I hollered ‘Oh!' or something of that kind." "Defendant did not, that afternoon, make any further attempt to have anything to do with me. He threatened my life if I told my mother, and said he would whip me." This is substantially all of the testimony tending to show guilt. The assault is positively denied by the accused. Prosecutrix continued to live with her parents. She was married in November, 1896. After her marriage, herself and husband continued to live with her parents until early

in January, 1897. At that time they had some family un-
pleasantness, and she made threats that she would "send
her father over the road." Soon after, they moved to an-
other house, and the complaint in this action was made.
She first told of this incident over three years and four
months after it is said to have happened, and after she was
married. At the time Mr. Nesbit came to the door, and
while she claimed to be in the most imminent danger, she
made no outcry and no appeal for protection. If her state-
ment is true, the situation was then most critical and atro-
cious. She does not claim to have been so overcome with
fright or overawed by threats that she was prevented from
realizing the enormity of the attempt made upon her. She
remained silent, and for more than three years kept silent,
and it is only when her father orders her and her husband
to seek a new stopping place that her tongue is loosened.
She offers no excuse for her silence,— not even the plausible
one of desiring to shield her father. Under these circum-
stances, we do not think this conviction should stand.

There is no rule of law in this state which forbids a jury
to convict of a crime of this kind on the uncorroborated evi-
dence of the prosecutrix, provided they are satisfied of the
truth of her testimony beyond a reasonable doubt. But the
courts all recognize the danger of convicting on her uncor-
roborated statements. As has been said, the "accusation is
one easily made, hard to be proved, and still harder to be
disproved by one ever so innocent." Courts are therefore
reluctant to sustain such convictions, unless the testimony
and surrounding circumstances are quite clear and decisive
of guilt. *State v. Connelly*, 57 Minn. 482. The fact that
there was no evidence of injury to her person, no outcry
when help was at hand, no complaint until long afterwards,
taken in connection with her threats against her father, her
ill feeling against him as manifested on the trial, and the
evident desire of the whole family to get rid of him, throw

doubt and suspicion upon her story, and render it highly improbable. An accusation so stale and so entirely without corroboration demands the closest scrutiny. So considered, we are quite well satisfied that the crime charged has not been established by that degree of proof required by law.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial. The warden of the state prison will surrender the accused, *Calvin Wilcox*, to the custody of the sheriff of Pepin county, who will keep him in his custody until discharged therefrom according to law.