HOFER, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 12—January 29, 1907.*

*Criminal law: Fornication: Evidence.*

As a rule of law there is no legitimate basis for a conviction in a prosecution of a man for fornication, if he unequivocally denies the charge; there is nothing suggestive to the contrary in the mere meeting of the parties under the circumstances; there is neither any direct evidence of the main fact nor direct corroborating evidence of the female as to circumstances bearing thereon, and her evidence as to such circumstances may be regarded as self-destructive by reason of wilful false swearing at material points.

[Syllabus by MARSHALL, J.]

ERROR to review a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

Error to review a conviction of the offense of fornication with a sane female of previous chaste character under the age of eighteen years.

It was claimed by the prosecution that the alleged offense was in fact committed at the home of the plaintiff in error. The companion of the alleged guilty party was a girl seventeen years of age. Such party was a Catholic priest in charge of the congregation to which the people belonged with whom the girl resided. At the request of the plaintiff in error, November 1, 1904, the girl visited him for the ostensible purpose of receiving religious instruction. She was received into his private study. There was a bedroom adjacent thereto. She testified that when she was so received, plaintiff in error locked the door; that he proceeded to ask her some questions, and soon thereafter gave her a powder, making some suggestions which induced her to take the same on her tongue; that she soon thereafter became unconscious; that after a time she regained consciousness, when she found herself sitting in the chair, as before, with the priest beside her; that she was somewhat dizzy; that he handed her the catechism, and soon opened the door for her to depart, admonishing her not to tell what had occurred, for if she did she would lose her religion; that she promised not to tell; and that while on her way home she was conscious of a new sensation, indicating that something wrong had occurred. She testified to having visited the house of plaintiff in error, and been received and treated as before, on five subsequent occasions, and thereafter received from time to time and not so treated, and that on March, 1905, she was baptized and received into the church. She further testified that on each of the six visits she first made she experienced on her way home the sensation before referred to, and that on the last of such visits she discovered that her clothes were disarranged, and that there were other indications of her having been abused. About nine months after the first of such visits she gave birth to a child. Her condition was discovered about two months prior thereto, whereupon plaintiff in error was induced to visit the place where she resided, and was then by the man of the house accused

of having been the means of her condition. He became, there-upon, greatly excited, vigorously denied the accusation, and demanded of the girl if she would face him and claim that any such thing had occurred as had been suggested. Where-upon she said that she knew what he had done. A few days thereafter he left the country. Later a warrant was sworn out for his arrest, and he was found at the home of a Catholic brotherhood in the vicinity of Dubuque, Iowa. At the time of his arrest he said to the officer that there was no need of reading the warrant to him, as he knew what it was about. He claimed to have been sent into retirement at the home of the brotherhood by his bishop. There was evidence on his part that the story of the girl as to his having given her pow-ders which rendered her unconscious was untrue; that her visits to him were not characterized by the privacy indicated by her testimony; that he locked the outside door only to pre-vent its blowing open; that there was a door opening from his study to parts of the house frequented by the housekeeper, so that she had full opportunity, at any time, to observe occur-rences in the study, and that several persons came into the study while the girl was there. There was further evidence that at about the time of the girl's visits to plaintiff in error, young men were paying her attentions. That on one occasion, on a Sunday, she attended a dance, which occurred in a hall over a saloon, and late at night after the dance walked a long distance to her home with her young man attendant. Several exceptions were saved to instructions given by the court and refusals to instruct.

For the plaintiff in error there was a brief by *Doherty & Baldwin,* and oral argument by *John F. Doherty.*

For the defendant in error there were briefs by the *Attorney General* and *J. E. Messerschmidt,* state law examiner, and oral argument by *Mr. Messerschmidt* and *Mr. Otto Bosshard.*

MARSHALL, J. Several exceptions of minor importance, as we view them, were saved to instructions given to the jury and now presented for consideration. They are not wholly without merit, therefore it seems best to discuss them in detail so that the difficulties they present may not appear in case of another trial of the cause.

Though iterating and reiterating that the accused was entitled to the full benefit of a legal presumption of innocence and could not properly be convicted unless the evidence established his guilt beyond a reasonable doubt, the learned trial court said to the jury:

"All that the law requires is that the jury shall be satisfied beyond a reasonable doubt, and it is for the jury to determine, under all the evidence, what constitutes a reasonable doubt in their minds." "The court submits the whole case to you upon all the evidence, and leaves it for you to say whether you believe the truth to be established beyond a reasonable doubt."

The expression is quite novel that *"It is for the jury to determine what constitutes a reasonable doubt in their minds."* It is probably true in the abstract that it is for the jury in any instance to determine what constitutes the conclusion *"in their minds"* on any branch of the case. The conclusion *"in their minds"* is the one that must govern. No one can form their conclusions for them. It was for the jury here to determine, after such explanation as the court afforded them, what constituted a reasonable doubt *"in their minds."* They, themselves, necessarily had to arrive at their own mental concepts. However the expression under consideration is not to be commended. Standing alone it might be fatally erroneous, though under the circumstances it does not seem reasonably probable that the fairly clear instruction on the subject of reasonable doubt and the frequent admonitions given that the accused was entitled to an acquittal unless his guilt was established to the satisfaction of the jury beyond a reasonable doubt, were thereby materially weakened. Yet the uncertainty of meaning which may possibly have been misleading

cannot be entirely overlooked when viewed in connection with other matters bearing on the question of whether the accused was given a fair trial.

The other expression quoted is by no means entirely clear. *"The court submits the whole case to you upon all the evidence, and leaves it for you to say whether you believe the truth to be established beyond a reasonable doubt."* Was that suggestive, reasonably, that the real truth of the matter was clear enough, but it was for the jury to determine whether they believed it to be established by the evidence produced beyond a reasonable doubt. If so, it was highly prejudicial. We do not think the learned court intended any such thing. The jury were told, as before indicated, most distinctly:

"The law presumes the defendant innocent until the state has satisfied you, beyond a reasonable doubt, of the guilt of the offense with which he is charged. That presumption of innocence attends or goes with the defendant throughout the trial up to the time that you have arrived upon your verdict."

The whole case, from first to last, proceeded upon the theory of a judicial search for the unknown, but perhaps not undiscoverable. That the jury may have thought, from what the court said at the conclusion of the cause, that they were to determine whether the truth was established beyond a reasonable doubt, instead of determine the truth of the charge beyond a reasonable doubt, or that the truth as to the innocence of the accused was required to be established beyond a reasonable doubt before he could be acquitted, instead of that he was entitled to his acquittal unless the charge was established as true beyond a reasonable doubt, is so contrary to the instruction as a whole as to be unworthy of adoption. The learned court, probably inadvertently, left out after the word "truth" the words "of the charge," or he used such words and the reporter failed to put them down. We pass the faulty instruction as, under the circumstances, not by itself prejudicial, though it were far better not to have given it.

A question is presented of whether the court erred in instructing the jury to the effect that they were not necessarily precluded from convicting the accused by rejecting the powder story; in other words, that, notwithstanding the false powder story, it was open to them to inquire on the whole case whether the criminal act charged occurred under ordinary conditions. That is involved in the question of whether the evidence, in any reasonable aspect of it, was sufficient to warrant a conviction and need not be considered apart therefrom.

Complaint is made because the court instructed the jury that:

"Evidence does not consist alone in what is stated by the witnesses. There are circumstances that come out in every case sometimes by showing the surroundings that are cogent and forcible in themselves, and it is a circumstance for you to consider in this case that about nine months from the time it is alleged that this took place that a child was born to this woman. The child being born does not, of course, necessarily mean, by any means, that it is necessary to find that the defendant was the father of the child."

The learned judge, doubtless, intended this: In the trial of cases evidentiary circumstances are commonly established which are of significant probative force in themselves, such as the circumstance in the instant case of a child having been born to the woman in about nine months after the alleged commission of the offense, though, of course, such circumstance does not necessarily indicate that the accused is guilty. We discover no error in that. True, circumstances are often established on a trial which are in themselves very persuasive as to the truth of the whole or some essential element in the case. The circumstance of the birth of the child in the particular instance is such a circumstance. It is one of those supremely persuasive circumstances which cannot speak falsely. One of the essentials to a conviction was that some one had carnal knowledge of the body of the girl. The jury did not

need to be told of that. The significant, indisputable fact that she gave birth to a child established that beyond peradventure. Another essential was that the act resulting in the birth of the child occurred at the time of the girl's visits to the accused. The circumstances that the child was a full-time offspring, and that the period commencing with such visits and ending with the birth was about the ordinary period of gestation, were also highly important since it was necessary that those features should be consistent with the theory of guilt and be inconsistent with any reasonable theory of innocence. Ordinarily the evidentiary weight of circumstances is wholly a matter for the jury; but when a fact is established with such certainty as not to permit of any reasonable doubt on the question and that fact leads irresistibly to another, it is proper to instruct the jury accordingly. *Cupps v. State,* 120 Wis. 504, 522, 97 N. W. 210, 98 N. W. 546.

Further complaint is made of this instruction:

"This case is important. It is important on both sides. It is very important to the defendant that he should not be convicted unless the evidence satisfies you beyond a reasonable doubt of his guilt. It is also important on the other side that the virtue of womanhood shall be protected by those thrown in a position of confidence and trust such as appears by the evidence to have been the case here, that is the relation of pupil, as it were, to a pastor or priest—one receiving at the time religious instruction,—and it is important that you consider all the facts and circumstances, but at the same time the defendant should not be convicted unless the evidence satisfies you, beyond a reasonable doubt, of his guilt."

What the learned judge doubtless meant and the jury understood by that is this: It is important to the public that womankind should be protected from dangers growing out of those relations of trust and confidence such as are common and necessary between the head of a church and the members and prospective members of his flock. We perceive no error in that. We do not agree with counsel that the charge was

prejudicially suggestive, in that it singled out the relation of a priest to one confidingly trusting in him for religious instruction; nothing of the kind. The purpose, manifestly, was to stimulate the jury to a high appreciation of their duty to discover, if practicable, the real truth of the matter in controversy, bearing in mind at every step that the scales should not be allowed to turn unfavorably to the accused, unless weighed down on that. side by evidence so convincing as to exclude every reasonable doubt of·guilt. Such admonitions, to the end that the jurors may more certainly discharge their part in important cases, having due regard for the great interests involved, are none too frequent. Jurors may well be stimulated by the judicial head to perform their duties considerately and fearlessly by holding up to their view the public interests and those of the accused as well, coupled with language, as in this case, making prominent the degree of certainty of guilt required to warrant a conviction. *Schwantes v. State,* 127 Wis. 160, 106 N. W. 237.

Error is assigned because the court refused to instruct the jury to the effect that they could not properly convict the accused and at the same time disbelieve the powder story. That is involved in the question of whether the evidence warranted a conviction and will not be separately considered.

Numerous exceptions were preserved to remarks of counsel for the state in addressing the jury, mostly predicated on the idea that they could not legitimately disbelieve the powder story and at the same time believe with the certainty required to warrant a conviction that the accused committed the act charged, which need not be separately discussed in view of the foregoing.

Complaint is made because the state's attorney said to the jury: "You will say whether intercourse did take place, as I believe in my judgment it did." That manner of address is not to be commended; and yet it is not to be condemned as harmful error, where the idea conveyed is, as it seems was

the case here, that the evidence convinces the speaker, as he believes it should the jury, of the guilt of the accused. The better way by far is to confine the address to fair efforts to produce that belief in the minds of the jurors which in the judgment of the speaker the evidence warrants, without expressing any opinion thereon as such. As was said here on another occasion, counsel for the state have a right to assume, fairly, that the evidence produced on the part of the state is true; that it establishes what it tends to establish, and that it points convincingly to the guilt of the accused, the jury being properly instructed that they are the sole judges in the matter, as they were in this case. *Fertig v. State,* 100 Wis. 301, 307, 75 N. W. 960.

Lastly, counsel for the state spoke of the child's hair being darker than the hair of children ordinarily of its age. The jury were immediately directed to disregard the suggestion and the attorney was admonished, emphatically, that his remark was improper. It seems that the child had been in court during the trial, where the jurors were afforded full opportunity to observe it, and acquire such impressions as its resemblance to the accused, if any, might create; though there was no attempt to exhibit it in evidence. In *Hanawalt v. State,* 64 Wis. 84, 24 N. W. 489, such remarks as those in question were held not harmful error when based merely on the presence of the child in court, the jury being promptly instructed to disregard them. ·

The dominant feature of the argument of counsel for plaintiff in error is that the evidence was not sufficient in any reasonable view of it to warrant a conviction; that there being no direct evidence of the main fact and that of the girl as to her condition at the time of the alleged intercourse being as a matter of law, as the jury were instructed, wilfully false, and there being no corroboration of her evidence as to circumstances existing immediately after the alleged criminal act, which if they existed, in fact, would be incriminating; in

other words, since the case on the part of the state as to the main fact rested wholly on uncorroborated evidence of the girl as to mere incriminating circumstances, in connection with the manifestly false story about her having been given a powder and immediately becoming unconscious and the accused having had intercourse with her while she was in that condition, if at all, in view of the established facts as to her association with others whereby her pregnancy could well be accounted for consistent with the innocence of the accused, and in view of his positive and unequivocal denial of the alleged criminal act,—there was not, as a matter of law, any legitimate basis for the verdict of guilty.   In that counsel plant the case of the accused at this point on this as a principle:  In prosecutions of this sort, there being nothing suggesting criminality in the mere meeting of the parties, the person charged should not, in the face of his unequivocal denial of the charge, be convicted in the absence of any direct evidence to the contrary as to the act of intercourse, or indirect evidence, except the uncorroborated testimony of the female as to incriminating circumstances in connection with her manifestly wilfully false statements strongly tending to destroy her credibility.

After a very careful consideration of the case we have reached the conclusion that the principle contended for, as above, is the law and that it rules this case in favor of plaintiff in error.  In such a situation as this; one, especially, where the proof is undisputed that the woman's pregnancy might have been produced otherwise than by the act of the person accused, there is no sound basis for a finding that the incriminating circumstances are all established beyond a reasonable doubt and that with such degree of certainty are all consistent with the theory of guilt and inconsistent with every other reasonable theory, all of which is necessary to a conviction. *Schwantes v. State,* 127 Wis. 160, 106 N. W. 237; 4 Elliott, Ev. § 2709.

How could it be said within the boundaries of reason from such evidence as we have here that the accused is guilty to a moral certainty—the highest degree of certainty attainable in human affairs—which is necessary to warrant a conviction? The woman unquestionably swore falsely, and wilfully so, at the most material point in the case in telling the ridiculous powder story. In view of that, is she to be believed so as to exclude every reasonable theory of innocence, she having associated with others than the accused who might have produced her condition? The jury might well, on account of her wilfully false evidence, have rejected all her testimony where not corroborated by some credible evidence, even if the accused had kept silent. The case is peculiar, in that no one testified that the act of intercourse alleged occurred, and no one directly or indirectly corroborated the evidence of the girl as to any incriminating circumstances happening at the time of the alleged wrongful act, and her evidence may be regarded as self-destructive.

The case, as claimed by counsel for the accused, falls clearly within the principle laid down in *O'Boyle v. State,* 100 Wis. 296, 300, 75 N. W. 989. True that was a case where the charge was rape, but it is considered that the principle declared is applicable as well to a case of this sort under the circumstances presented. The court there said:

"Where the evidence of the prosecuting witness bears upon its face evidence of unreliability, to sustain a conviction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime."

*Maxfield v. State,* 54 Neb. 44, 74 N. W. 401, was cited, where the court held that in case the evidence of the woman as to the main fact is so unreliable as to be self-destructive in respect thereto, there should be some reasonable corroboration of her evidence as to the main fact to warrant a conviction. The same rule was applied in *Smith v. State,* 23 Ga. 297, cited to our attention by counsel for plaintiff in error.

Counsel for the state answered the argument of counsel for the accused regarding there being no evidence corroborating the girl as to the main fact by pointing to the circumstances that the girl unquestionably visited the accused at the time she claimed to have done so; that a child was born to her in about the ordinary period of gestation thereafter, and that the accused left the state and retired to a religious institution of his order in a sister state soon after he knew that he was suspected of being the guilty party. Her pregnancy merely evidenced that a crime was committed by some one. The birth of the child at a time rendering it probable that the offense occurred about the date of her visits to the accused did not corroborate her as to any incident she testified to pointing to criminality. The same is true as to the circumstance of the accused leaving the state. The fact that the girl visited the accused in private was mere proof of opportunity, not of the main fact or of any circumstance evidentiary thereof.

The learned assistant attorney general, while joining with the learned district attorney in adhering to the theory upon which the case was submitted to the jury, presented for consideration the theory that the girl was unconscious, as she testified, at the time it was claimed the criminal act occurred; that her condition was produced by hypnotism practiced by the accused, and that the trial court incorrectly charged the jury that her testimony was manifestly false. There was no evidence produced to support that, and we do not see our way to adopt or seriously consider it. The cause, as indicated, was submitted upon the theory that if the criminal act occurred the girl was conscious of and participated in it, and that her entire story as to having been made unconscious on the first six occasions of her visiting the accused was a fabrication. It is considered that the cause must stand or fall on such theory; that the conviction cannot be sustained upon one not presented to or considered by the jury and in respect to which there is no evidence, and at the best only conjecture.

We reach the conclusion that the judgment should be reversed because of insufficiency, as a matter of law, of the evidence to sustain it.

*By the Court.*—The judgment is reversed, and the cause is remanded for a new trial.