GANZEL, Plaintiff in error, vs. THE STATE, Defendant in
error.

*December 15, 1924—January 13, 1925.*

*Rape: Uncorroborated testimony of complainant: Credibility: Sub-
sequent conduct: Evidence: Sufficiency.*

While a conviction for the crime of rape may be sustained upon
   the uncorroborated testimony of the complaining witness, a
   conviction upon such testimony is not to be arbitrarily sus-
   tained under all circumstances; and in this case, which is an
   appeal from a conviction of the defendant of the crime of
   statutory rape on his fifteen-year-old daughter, the attending
   circumstances and the subsequent conduct of the daughter
   are *held* to cast so much doubt upon the credibility of her
   testimony that the judgment and sentence are not permitted
   to stand.

APPEAL from a judgment of the circuit court for Shaw-
ano county: EDGAR V. WERNER, Circuit Judge.   *Reversed.*

The cause was submitted for the plaintiff in error on the
brief of *Eberlein & Larson* of Shawano, and for the defend-
ant in error on that of the *Attorney General, J. E. Messer-
schmidt,* assistant attorney general, and *R. H. Fischer,* dis-
trict attorney of Shawano county.

OWEN, J.   The plaintiff in error (hereinafter called the
defendant) was convicted of the crime of statutory rape
upon his fifteen-year-old daughter.   The conviction rests
upon the uncorroborated testimony of the daughter.   She
testified that her mother died in 1915.   This death broke up
the family.   She lived with her uncle until about the 1st of
October, 1920, when she returned to her father, who had
provided living quarters in the village of Gresham, and she
kept house for him until October, 1923, a period of about
three years.   She testified that during this time her father,
at frequent intervals, had sexual intercourse with her, the
first act, which is the one upon which the conviction was

based, occurring on the 23d day of October, 1920, the last about Easter time of 1923. In June, 1923, her younger sister, who had been living with friends and relatives, was brought home, and they lived with their father until the complaining witness left home in October, 1923. She left home because she wanted to work out, and her father had told her that when she became eighteen years of age she could do so. She became eighteen years of age in September, 1923.

During the time she was living with her father she was very friendly with two married women in the village of Gresham, where they lived. She visited them very frequently, two or three times a week, and was also friendly with their daughters. Upon one occasion, when her father was absent from home and was in a hospital at Appleton, she lived in the home of one of these ladies for a period of nine weeks. During this time she had opportunities to work for wages but did not do so because she did not know how soon her father would return and require her services as housekeeper. She never mentioned to these ladies the fact that her father was indulging in sexual intercourse with her.

At Christmas time she returned to Gresham, bought her father a necktie for a Christmas present, and sent it to him by her younger sister. The defendant refused to accept the necktie unless the complaining witness brought it in person. This the complaining witness did not do, stating that because her father was drinking she was afraid of him. She made no complaint to any one concerning the incestuous relations until March, 1924, when she told a barber in Gresham, whereupon she and the barber went to the office of the district attorney and swore out a warrant for the defendant. The defendant denied having any sexual relations with the complaining witness at any time.

A sentence of seven years in the penitentiary upon this evidence must give anxiety to any one having any responsibility for the consequences visited upon the defendant. It is true that this court has held many times that a conviction

Ganzel v. State, 185 Wis. 589.

for the crime of rape may be sustained upon the uncorroborated testimony of the complaining witness. It does not follow, however, that a conviction upon such testimony is to be arbitrarily sustained under all circumstances. This is indicated by the case of *Wilcox v. State,* 102 Wis. 650, 78 N. W. 763, where the conviction of a father of an assault upon his daughter with the intent to commit rape was reversed, although supported by the evidence of the daughter. In that case the subsequent conduct of the daughter cast doubt upon her veracity, and when her testimony was considered in the light of admitted facts and circumstances it was felt that the conviction of the defendant was attended with too much doubt to be permitted to stand. It is true that convictions for sexual crimes must rest very largely upon the testimony of the complaining witness, as direct corroborating testimony is well-nigh impossible to procure. However, it is always legitimate to consider whether the subsequent conduct of the complaining witness is the usual and natural conduct of an outraged woman as bearing upon the credibility of her direct testimony.

In this case the testimony of the complaining witness should be considered in the light of all attending circumstances. These are few and perhaps not very significant, but nevertheless we feel that they cast so much doubt upon the credibility of her testimony that the judgment and sentence in this case should not be permitted to stand. In the ordinary case of rape, where the consent of the female to the sexual intercourse constitutes an essential element, her subsequent conduct may be compared with the conduct usually and naturally expected from a woman whose feelings and whose chastity have been outraged. In this case the question of consent is immaterial, and it may be assumed that the acts of intercourse were even welcomed by the complaining witness. This would account, without in any manner affecting the defendant's guilt, for her failure to make complaint to any one until six months after she had left home. The unnatural thing about her conduct is that, having re-

mained silent during the three years in which she was subjected to the lusts and passions of her father, she should complain to a barber and become a party to his immediate prosecution. While it appears, according to her own testimony, that there was some disagreement between her and her father because of her going to dances and staying out nights, there is nothing to indicate but that during all this time she had anything but the kindliest feelings towards her father. Although she does testify that at times when he was drinking she was afraid of him, she does not, however, attribute her leaving home to any conduct on the part of her father. She said she left home pursuant to a desire on her part to work out, and that her father had promised her that she might do so upon attaining the age of eighteen years.

When she returned to the village at Christmas time she sent her father a Christmas present. She was then of sufficient age to fully appreciate the character of the heinous conduct with which she now charges her father. For three months she had been out from under his influence, but instead of having him prosecuted she reveals her feelings for him by purchasing and sending him a Christmas present. In the following March she tells a barber about the incestuous relations existing between her and her father, with the result that she and the barber repair to the office of the district attorney and immediately institute this prosecution. This latter conduct is strangely inconsistent with her past conduct and gives rise to a very strong suspicion that this prosecution is prompted by ulterior and unexplained motives. Certainly there was a radical change in the feeling which she entertained towards her father between Christmas, when she revealed a natural filial regard for him, and March, when she charges him with a heinous and repulsive crime. Such conduct casts so much doubt upon her credibility that we cannot permit the judgment and sentence in this case to stand.

· This disposition of the case makes it unnecessary to consider certain procedural errors raised by the defendant.

*By the Court.*—The judgment is reversed. The warden of the state prison will forthwith discharge the defendant *Henry Ganzel.*