RICE, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 14—February 7, 1928.*

*Criminal law: Unrebutted testimony of defendant's witness: Effect: Indecent liberties with twelve-year-old girl: Uncorroborated testimony of girl: Trial: Evidence of prior conviction of similar offense: Explanation by defendant: Instruction as to date of offense when defense is alibi.*

1. In a prosecution for taking indecent liberties, the state having had the opportunity for rebuttal of defendant's case and not having availed itself thereof, the uncontradicted testimony of a witness for the defendant, a physician, as to the character of the place where the offense was claimed to have been committed and as to the mental condition of the girl upon whose person the offense was alleged to have been perpetrated, must be accepted as true. p. 186.
2. While corroboration is not absolutely necessary for conviction in such a prosecution, a conviction without corroboration will not be sustained under all circumstances. pp. 186, 187.
3. Where an examination by an eminent and competent physician disclosed that the girl had a mental condition calculated to induce unreal and phantom pictures in her mind, and her testimony is wholly uncorroborated and its truth highly improb-

able and against the experience of mankind, a conviction will be set aside as without sufficient support in the evidence. p. 188.

4. While it was proper, as going to defendant's credibility, to show by him that he had been convicted of crime, it was prejudicial error in this case to show that he had been convicted of the same kind of an offense as that for which he was on trial. p. 189.

5. Where evidence of a former conviction of defendant is shown to affect his credibility, he must be allowed to make a general explanation; but in this case it is *held* that a general explanation would not relieve of its prejudicial character evidence that he had been convicted of the same kind of offense as that for which he was being tried. p. 189.

6. Where the witness with whom the indecent liberties were alleged to have been taken testified on the preliminary examination with certainty as to the dates of distinct offenses, but on the trial, though admitting her former testimony, was reluctant to fix any date definitely, and defendant offered an *alibi* as to the specific dates to affect the girl's credibility, and although the court correctly instructed the jury that the gist of the offense was not the time when it was committed, but whether it was committed on or about the time charged, the jury should have been told that they were at liberty to consider the evidence of *alibi* as bearing on the credibility of the witness. pp. 189, 190.

ERROR to review a judgment and sentence of the plaintiff in error rendered and entered in the circuit court for La Crosse county: R. S. COWIE, Circuit Judge. *Reversed, with directions.*

*R. A. Goodell* of Platteville, for the plaintiff in error.

For the defendant in error there was a brief by *R. M. Orchard,* district attorney of Grant county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Orchard* and *Mr. Messerschmidt.*

CROWNHART, J. On the 25th of August, 1926, the mother of Veronica Smith made complaint before a magistrate at Platteville, Grant county, Wisconsin, that *Sherman Rice,* herein called the defendant, "did unlawfully and car-

nally know and abuse" her daughter on July 21st of that year. Defendant was arrested and was bound over to the circuit court for trial. There appears to have been an examination before the magistrate, at which Veronica Smith testified at length, although the testimony was not returned to this court and the docket entries of the magistrate are silent as to the fact. October 9, 1926, the district attorney filed an information against the defendant in the circuit court for Grant county charging the defendant with the crime of rape on the girl on the 21st of July, 1926. On May 10, 1927, the district attorney filed an amended information charging the defendant on two counts with the crime of rape on July 3d, and again on July 21, 1926, and on a third count charging defendant with taking indecent liberties with the girl without intending to commit rape, on each of the two dates mentioned in the first and second counts. And finally, on the 11th of May, on the day of going to trial, the district attorney filed an information charging defendant with taking indecent liberties with the girl on July 3 and July 21, 1926, "with her consent and without intending to commit rape."

The case was tried in La Crosse county on change of venue.

The girl was twelve years and ten months of age when she claims the offenses were committed. She testified on the trial that she had known the defendant for several years; that on several occasions during that time he had put his hand on her privates, outside her clothes, each time in a more or less public place; that about the 3d day of July, 1926, about 3 : 30 p. m. of a clear, sunshiny day, defendant met her on the main street in Platteville, and she went with him about three blocks away from the main street along a public highway, to a point about sixty feet south of a creamery, and there, six feet from the highway, at the direction of the defendant, she took down her bloomers, lay down on her

back, and defendant got on top of her and placed his privates next to hers; there was no copulation nor any attempt at penetration; her clothes were not soiled; in two or three minutes defendant got up and she did likewise; defendant then gave her $3, advised her to go, and she went back to the city and bought a pair of shoes with the money.

The girl further testified that on the 21st day of July, on a clear, sunshiny day, between 3 and 4 p. m., she again met the defendant on said main street, and went with him to the same place as formerly, and again the same thing took place, in the same manner. At that time she said defendant gave her $1.25, with which she bought a pair of roller skates. The girl testified on direct examination that the defendant solicited her to go with him on July 2d, and on cross-examination she testified that on July 3d she walked up to defendant and told him if he would buy her a pair of shoes she "would let him do that." She testified that where the offenses took place there were brush and weeds. There were no other witnesses to the facts, on the part of the State.

The defendant at the time was sixty years of age, and for five years had been an engineer for the city of Platteville, at its water-works. He was married, lived with his wife, and in the same home with his daughter and her husband. Close by lived his son and his wife.

The defendant specifically denied every charge made by the girl. He very satisfactorily proved an *alibi* on July 3d and on July 21st and 22d, and yet the jury found him guilty as of July 3d and July 21st.

Dr. Wilson Cunningham, on the part of the defense, testified that the place along the highway where the girl testified the offenses occurred was an open, blue-grass pasture, entirely clear of weeds or brush. There was nothing to obscure a clear view from the creamery near by, a garage at the head of the street a little more than a block away, a residence a little further down the street, and several other

residences to the east near by. The witness was very familiar with the location and swore that there were no weeds or brush or any cover of any kind along the highway for more than a tenth of a mile beyond the place in question. He also testified the highway was much traveled by farmers and autos, and that hundreds of children passed that way each day in summer to go to a swimming pool.

Before the trial the district attorney and defendant's counsel agreed that Dr. Cunningham, a recent president of the State Medical Society, who operated a hospital in Platteville, should examine the girl on behalf of the defendant, and that Dr. Andrew might examine her on behalf of the State. Dr. Cunningham made such an examination and testified that he found the girl mentally abnormal,—"of a perverted mind with a depraved mental condition" and "passing through a stage, which frequently occurs in young girls, of imagination, which is sometimes carried entirely beyond facts and conditions." Dr. Andrew was not called as a witness, and the testimony of Dr. Cunningham stands uncontradicted.

It appears that on the examination and on the trial the girl claimed that a prominent merchant of Platteville had performed the same act in the same way with her when she was eight years old.

The girl did not tell her mother about the offenses until August 24th following, and it will be remembered that the complaint sworn to by the mother on August 25th was for rape. The girl on the examination fixed the dates with particularity by reference to other facts. On the trial she fixed the date of July 3d because she had just come from her attendance at "Sunday school" or instruction in catechism, which was on Saturday, July 3d.

The girl had lived a rather abnormal life. Her father died when she was very young. Her mother had been afflicted with tuberculosis, and during 1925 the child had

been in an orphanage while her mother was in the sanatorium at Wales.

This case is shrouded in mystery. There is no corroboration of the girl's testimony in any material particular whatever. The circumstances of a married man with a family, sixty years of age, taking this young girl, on a bright, sunshiny day, in the middle of the afternoon, along a much traveled public highway, and then at a point in plain view of many houses committing such an unnatural and revolting act, taxes our credulity. That such an act should take place once without discovery is highly improbable, but twice in the identical place, time of day, and manner, and without some witness, seems quite incredible. That this young girl should seek this defendant on the street and solicit such an offense in broad daylight and in a public place is not in accord with human experience. Sex crimes, even by depraved criminals, are crimes of seclusion and secrecy.

The more sensible view of this matter comes from Dr. Cunningham, that the child was not normal, but imagined things entirely beyond facts and conditions. She was approaching the age of puberty, when her mind might be disturbed by her physical condition. The charitable view is that she was not responsible for her improbable stories; rather that they were the figments of her abnormal condition.

We must accept the evidence of Dr. Cunningham as true, both as to the character of the place where the offense was claimed to have been committed and as to the mental condition of the girl, for if not true, the State had the opportunity for rebuttal and owed the duty to the court and jury to rebut such testimony. Corroboration is not absolutely necessary in such cases, but it has always been considered as very desirable to the fullest extent possible. As was said by Lord Chief Justice HALE nearly three hundred years ago, in speaking of the kindred crime of rape:

"It must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by

the party accused, though never so innocent." Hale's Pleas of the Crown, vol. 1, p. 635.

This court has frequently expressed the same idea. In *Wilcox v. State,* 102 Wis. 650, 652, 78 N. W. 763, this court said:

"Courts are therefore reluctant to sustain such convictions, unless the testimony and surrounding circumstances are quite clear and decisive of guilt."

In *Ganzel v. State,* 185 Wis. 589, 590, 201 N. W. 724, this court, by Mr. Justice OWEN, said:

"A sentence of seven years in the penitentiary upon this evidence must give anxiety to any one having any responsibility for the consequences visited upon the defendant. It is true that this court has held many times that a conviction for the crime of rape may be sustained upon the uncorroborated testimony of the complaining witness. It does not follow, however, that a conviction upon such testimony is to be arbitrarily sustained under all circumstances."

In *O'Boyle v. State,* 100 Wis. 296, 300, 75 N. W. 989, the court said:

"Where the testimony of the prosecuting witness bears upon its face evidence of its unreliability, to sustain a conviction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime."

Here there was opportunity to corroborate the testimony of the girl as to the weeds and brush at the place of the alleged offense, if true, which would have had some weight in making such story less improbable; it would seem that specific facts testified to by defendant's witnesses as to his *alibi* on the date in question could have been discredited if untrue; it would seem that some evidence could have been produced that at some time connected with the case defendant was seen with the girl, or at least that he was seen in the vicinity, at or near the time in question, but the State rests with not a single corroborating circumstance supporting the testimony of the girl or denying the testimony of the defense. Yet the

girl testified that on each occasion, as she came on the highway after the offense, two people walked along the highway near by. Even the testimony of Dr. Cunningham as to the girl's mental depravity is unquestioned, although the State had ample opportunity to ascertain the truth or falsity of such testimony. The consequences to the defendant are so grave, if the conviction is sustained under the circumstances, that we are compelled to hold that the evidence was insufficient to convict.

Lord Chief Justice HALE graphically illustrates the dangers of conviction on uncorroborated evidence of the complaining witness, by rape cases charged by young girls, coming before him or to his attention, and concludes:

"I only mention these instances, that we may be the more cautious upon trials of offenses of this nature, wherein the court and jury may with so much ease be imposed upon without great care and vigilance; the heinousness of the offense many times transporting the judge and jury with so much indignation, that they are overhastily carried to the conviction of the person accused thereof, by the confident testimony sometimes of malicious and false witnesses." Hale's Pleas of the Crown, vol. 1, p. 636.

The experience of Chief Justice HALE has been the subject of much comment by law writers from his time to the present.

When, as here, an examination of the girl by an eminent and competent physician discloses that she had a mental condition calculated to induce unreal and phantom pictures in her mind; where her testimony is wholly uncorroborated, its truth highly improbable and against the experience of mankind, we cannot hesitate to set aside the conviction as without sufficient support in the evidence.

We think the jury may have been misled by errors of the court. The defendant was asked by the district attorney on the stand if he had ever been convicted of crime, to which he answered "Yes." This was proper as going to his credi-

bility.  But the examination on that point should have stopped there.  However, the district attorney proceeded to inquire as to the nature of the offense, and the court interrupted to inquire: "What were you charged with?"  The defendant answered: "Just about the same thing."  Question by the court: "Same kind of an offense as this?"  Answer: "Just about, and my attorneys—"  The court: "Never mind, your attorney may examine if he wishes."  Defendant then denied his guilt on the charge but was not allowed to try that issue.  Of course that issue could not be tried in the case before the court, but it was error to inject such an issue into the case.  *Paulson v. State,* 118 Wis. 89, 98 *et seq.,* 94 N. W. 771.  As it stood, it was highly prejudicial.  The jurors, understanding the evidence to be competent for their consideration, could readily come to the conclusion that defendant was given to the practice of the kind of offense with which he was charged.

Where such evidence of a former conviction is admitted, the defendant must be allowed to make a general explanation.  *Kraimer v. State,* 117 Wis. 350, 93 N. W. 1097; *Benedict v. State,* 190 Wis. 266, 208 N. W. 934; *Remington v. Judd,* 186 Wis. 338, 202 N. W. 679.  However, because of the nature of the evidence adduced, and the emphasis given to it by the court's questions, we think no general explanation would relieve it of its prejudicial character.

On the preliminary examination of the girl she had testified with much certainty as to the dates of the two offenses.  On the trial, however, she was reluctant to fix any date definitely.  She was questioned as to her former testimony, which she admitted.  The defendant offered an *alibi* as to each of said dates.  The court instructed the jury that the gist of the offense was not the time when it was committed, but whether the offense charged was committed on or about the time charged.  This was a correct statement of the law, but in view of the fact that the *alibi* had been shown, as to

the specific dates, to affect the credibility of the witness, the defendant claims the charge of the court ignored the purpose of the *alibi* and in effect removed it from the consideration of the jury. We think the court should have told the jury that they were at liberty to consider the evidence of an *alibi* as bearing on the credibility of the witness.

There are other errors assigned, but in view of the conclusion we have reached it is unnecessary to consider them.

*By the Court.*—The judgment and sentence of the circuit court are reversed, with directions to discharge the defendant.