CLEAVELAND, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 15—May 9, 1933.*

For the plaintiff in error there was a brief by *Dennis M. Sullivan, Jr.* and *Eugene J. Sullivan,* both of Milwaukee, and oral argument by *Eugene J. Sullivan.*

For the defendant in error there was a brief by the *Attorney General, William A. Zabel,* district attorney of Milwaukee county, and *John E. Martin,* assistant district attorney, and oral argument by *Mr. Martin.*

NELSON, J. The information herein charges that the defendant did, on the 27th day of December, 1932, at the county of Milwaukee, make an assault in and upon one Gladys Salmon, a female under the age of eighteen years, to wit, of the age of seventeen years, and her, the said Gladys Salmon, did then and there unlawfully carnally know and abuse.

The original complaint was made by a police officer upon information and belief. It stated that the alleged offense was committed on the 20th day of December, 1932. The date found in the complaint was unquestionably based upon information given by Gladys before the complaint was drawn. On January 31st, the date of the preliminary examination, the state moved to amend the complaint and

warrant by changing the date of the alleged offense from December 20th to December 27th. As a result of the preliminary examination the defendant was held for trial. Trial was thereafter had on the 10th day of February, 1933, resulting in a verdict of guilty.

Only so much of the testimony as is necessary to an understanding of the views of the court expressed herein will be stated. On December 27, 1932, Gladys Salmon was seventeen years of age. She was a neighbor of the defendant and had known him for four or five years. At one time she was employed as a nursemaid in his home and at another time as a clerk in his store. On December 27th the defendant was a married man thirty-three years of age and resided with his wife and six-year-old child. He was engaged with two of his brothers in operating a radio store at 2044 East North avenue. At the trial the date of the alleged offense was positively stated by Gladys to be the 27th of December, the time of its commission between 10 and 10:15 o'clock in the evening, and the place in one of the front rooms of the defendant's store. She was sure that December 27th was the date of the offense because that particular day was her seventeenth birthday and because, during the evening of that day, she was ordered by a policeman to leave a certain bowling alley which figures in this prosecution.

It is not disputed that Gladys was in the bowling alley during the evening of December 27th in company with two other girl friends and three young men who were strangers to her; that she and one of the other girls took several drinks of strong liquor from a bottle provided by the young men; that during the evening she and her girl companions were ordered to leave the alleys; that the defendant was in the alleys that evening and was engaged in bowling for a period of about two hours commencing at about 8:15 o'clock; that Mrs. Cleaveland, defendant's wife, was also in the alleys that night watching her husband bowl, and that

at the time Gladys was ordered to leave the defendant was engaged· in bowling.

Gladys testified that after leaving the alleys at about ten o'clock she waited outside until the defendant came out; that thereupon she and the defendant walked to defendant's radio store a short distance away where the alleged act of intercourse took place and that she then went home.

We have carefully searched the record for some evidence to corroborate her story that an act of intercourse took place between her and the defendant on December 27, 1931, or that she met the defendant in front of the bowling alley building and walked with him to his store. No such evidence has been found. While it is the established law of this state that a person may be convicted of rape on the uncorroborated testimony of a prosecutrix if the jury is satisfied as to the truth of her testimony beyond a reasonable doubt, all courts recognize the obvious danger of convicting on such uncorroborated testimony. *O'Boyle v. State,* 100 Wis. 296, 75 N. W. 989; *Wilcox v. State,* 102 Wis. 650, 78 N. W. 763; *Hofer v. State,* 130 Wis. 576, 110 N. W. 391; *Donovan v. State,* 140 Wis. 570, 122 N. W. 1022; *Ganzel v. State,* 185 Wis. 589, 201 N. W. 724; *Rice v. State,* 195 Wis. 181, 217 N. W. 697.

As has been said, the " 'accusation is one easily made, hard to be proved, and still harder to be disproved by one ever so innocent.' Courts are therefore reluctant to sustain such convictions unless the testimony and surrounding circumstances are quite clear and decisive." *Wilcox v. State, supra.* "Where the testimony of the prosecuting witness bears upon its face evidence of its unreliability, to sustain a conviction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime." *O'Boyle v. State, supra.*

It appears without dispute that a goodly number of people were in the bowling alleys on the evening of December 27th

and that defendant's game which he was engaged in playing ended about 10:15. No witness except Gladys pretended to testify that the defendant left the bowling alleys alone unaccompanied by his wife. Several witnesses testified to the contrary. Gladys alone testified that she waited out in front of the building until the defendant came out. None of her companions were produced except her friend Pauline Hoetzel who was subpœnaed by the state but called by the defendant. She testified to her friendly relations with Gladys; that she was with Gladys in the bowling alleys during the evening of December 27th; that she and Gladys were ordered out of the place by a policeman; that Gladys did not remain outside longer than five minutes, and that when Gladys saw a policeman come out of the alleys she ran in the direction of her home. No attempt was made by the state to prove that Mrs. Cleaveland left the alleys alone or in the company of some one other than her husband. If she did leave the alleys prior to the time that her husband left, it seems that the state might have found some witness to testify to such fact. Mrs. Cleaveland did not testify at the trial. The state complains that it had no opportunity to question her in regard to the happenings of that evening. It appears, however, that the assistant district attorney who tried the case knew that divorce proceedings had been commenced by Mrs. Cleaveland against her husband following his arrest, for in cross-examining the defendant, the state, very improperly as it seems to us, deliberately brought out the fact that the defendant's wife had commenced such proceedings. Such evidence was wholly immaterial and, in this case, where the story of the prosecutrix was not corroborated, it was well calculated to prejudice the defendant in the eyes of the jury.

The defendant contends that no medical testimony was produced tending to show penetration. The defendant contends that the state therefore failed to prove an essential

element of the offense. Gladys, however, testified that she had intercourse with the defendant that evening. In *Athos v. State*, 199 Wis. 228, 225 N. W. 692, it was said: "When one of understanding testifies to a completed act of sexual intercourse it is sufficient proof of penetration."

Considering the age, maturity, and apparent worldly experience of Gladys, we think her testimony, if believed by the jury, was sufficient to prove that element of the offense.

It appears from a subpœna, which is a part of the record, that a certain doctor was subpœnaed by the state but that he was not called as a witness. When the case was being argued before us the assistant district attorney, who tried the case and who argued the case in this court, was asked why the doctor was not called. His reply was to the effect that he felt that the doctor's testimony would have prejudiced the state's case since the physical examination of Gladys revealed that she had, for a very considerable period of time, unquestionably indulged in acts of sexual intercourse. While the chastity of a prosecutrix in a prosecution for statutory rape ordinarily is immaterial since she is incapable of consenting to intercourse, we think the facts revealed by the doctor's examination should have been brought to the attention of the court below to the end that such facts might have been given consideration in determining the sentence to be imposed. Whether the court knew of such facts or considered them in imposing sentence does not appear. We mention this incident so that in case another trial is had the court may be fully advised as to such facts. 52 Corp. Jur. p. 1083, § 111.

Because there appears to be no corroboration of the story of Gladys either as to the offense charged or as to the material attending circumstances, because testimony of the prosecuting witness bears upon its face evidence of unreliability when considered in connection with the undisputed testimony as to the surrounding circumstances, because no tes-

timony was produced by the state tending to show when or how Mrs. Cleaveland left the bowling alleys if she did leave prior to the departure of her husband, and because the state, on cross-examination of the defendant, deliberately brought out the fact that Mrs. Cleaveland had started divorce proceedings against the defendant following his arrest, there arise in our minds such grave doubts as to the guilt of the defendant of the particular crime charged that we are impelled to hold that it is probable that justice has miscarried. We therefore exercise the authority conferred upon us by sec. 251.09, Stats., and reverse the judgment that a new trial may be had.

*By the Court.*—Judgment reversed.   The inspector of the Milwaukee house of correction is directed to deliver the defendant into the custody of the sheriff of Milwaukee county for further proceedings according to law.