STATE, Respondent, vs. CRABTREE, Appellant.

*January 10—February 4, 1941.*

*Tom L. Yates* of Amery, for the appellant.

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz* and *Mr. M. J. McDonald,* district attorney of Polk county.

MARTIN, J. Defendant contends that the court erred, (1) in denying his motion for a discharge, and (2) in refusing to grant him a new trial.

Defendant, Jack Crabtree, age thirty-one, was employed as a barker for a carnival show, which show, in part, consisted of women "stripping" or posing in the nude. While the carnival was showing at Austin, Minnesota, where the prosecutrix, Elaine Bringe, lived, and while she was attending said carnival at Austin, defendant approached her and inquired whether she would like to work in the show. She replied that she would, but not in her home town where she was known. Later she joined the carnival while it was showing at Caledonia, Minnesota, and from there, it went to Amery, Wisconsin.

The prosecutrix testified in substance as follows: On the night of July 8, 1940, at Amery, Wisconsin, defendant accompanied her from the carnival grounds to her hotel where he left her. Soon thereafter, he returned to the hotel and entered her room while she was momentarily absent. Upon returning to her room she showed defendant a costume she was making. She then dressed her hair, which took about a half an hour, and she then sat on the bed with defendant for fifteen or twenty minutes, after which they had intercourse. Defendant was in her bedroom about an hour in all.

Defendant testified in substance as follows: On the evening of July 8, 1940, the carnival closed at about 11:30, and it took him twenty-five to thirty minutes to check the tickets which had been sold and to make settlement for the evening's performance. He then went to a restaurant on the show grounds, paid his bill, and there waited for one Clarence Saveland, an employee of the carnival; that Saveland and he left the carnival grounds at about 12 o'clock, went to Dehler's Cafe, located on the main street of Amery, to get cigarettes, and while at this cafe, he saw the prosecutrix sitting in a booth with one Ray Hamilton, also an employee of the carnival. From Dehler's Cafe, Saveland and he went to the all-night

restaurant where they had a lunch, and from there they went to the Kelnstine home where they roomed, arriving there about 1 o'clock. Defendant denied being at the hotel, where prosecutrix stayed, at any time during the evening or night of July 8th.

Clarence Saveland testified that he worked for the carnival, and that he remembered working late on the night of July 8th; that he met defendant at the restaurant on the show grounds about midnight; and that they left the carnival grounds together and walked to Dehler's Cafe. While in said cafe, he saw the prosecutrix; that defendant and he left the place together and went to the all-night restaurant on the main street in Amery and there had a lunch. From there they went directly to their rooming house.

In rebuttal the state called John Helstern, sheriff of Polk county. The only material testimony given by Mr. Helstern is to the effect that on the night of July 8th, the district attorney and he were called to Amery on professional business. They got there at five minutes to twelve, stopped in front of the Amery clinic, and there had a talk with Drs. Waterman and Campbell for three or four minutes. They then went toward the carnival grounds and found the carnival had closed. It was then midnight and the district attorney and he went back to Amery and had a lunch at the all-night restaurant. They left the restaurant at about 1 o'clock a. m. The witness was asked whether he saw the defendant and Clarence Saveland in the all-night restaurant while he was there, to which he answered: "No, I did not." He was then asked to name those he saw in the restaurant and he gave the names of several different persons. He further testified that he saw two strange couples sitting in the booths, accompanied by a woman.

Robert Elliott, a witness for the state in rebuttal, testified that he was in the all-night restaurant while Sheriff Helstern was there. During this time he did not see the defendant or

Saveland in the restaurant. The prosecutrix in rebuttal testified that she was not in the all-night restaurant on the night of July 8th. Neither the sheriff nor Mr. Elliott testified to having seen Mr. Carl Burman, the chief of police of Amery, in the restaurant while they were there. Mr. Burman, in rebuttal, testified that he was in the restaurant while the sheriff and Mr. Elliott were there. He further testified that during the week of the carnival he stopped in at the all-night restaurant every night, after midnight, for a light lunch. He also testified that on several nights during the carnival he saw the defendant in the restaurant.

It appears that on July 15, 1940, the date of the preliminary examination in this case, the prosecutrix testified in preliminary examinations in two other cases, in which she claimed to have had sexual relations with two other men on separate occasions during the week of the carnival. The three defendants were held for trial in the county court of Polk county on the charge of having had carnal knowledge and abuse of the prosecutrix in violation of sec. 340.47, Stats.

On the preliminary examination in the instant case, the prosecutrix testified that she was not sure of the date on which she claimed to have had sexual relations with the defendant. She could not definitely say it was the 6th, 7th, or 8th of July. She testified she knew what sexual intercourse was. She was then asked by the district attorney:

"*Q*. State whether or not you had a sexual intercourse on the night you have described. *A*. I am not sure."

Following this she testified that defendant put his sexual organ in her sexual organ. The district attorney then asked her:

"*Q*. You are sure that you were in the hotel and the act of committing a sexual intercourse with Crabtree was either on the sixth, seventh, or eighth of July? *A*. Yes."

On the trial she testified that the intercourse took place on the 8th of July.

Defendant contends that there is no evidence of penetration sufficient to sustain a conviction. Any actual penetration is sufficient to constitute rape where the other essentials of the crime are present. The degree to which the person of the female was entered is not material. *Murphy v. State,* 108 Wis. 111, 83 N. W. 1112. In this case it is said at page 114 that ". . . the engagement of the sexual organs at all beyond surface contact, all the other essentials of the crime charged being present, fully consummate the offense of rape. . . ." To the same effect, see *Collins v. State,* 181 Wis. 257, 194 N. W. 158; *Richards v. State,* 192 Wis. 20, 22, 211 N. W. 669. It must be held in the instant case that the evidence is sufficient to establish the element of penetration.

Defendant's next contention is that there is no corroboration of the prosecutrix's testimony, that her testimony is unreliable, and that the conviction should not be permitted to stand. In *Cleaveland v. State,* 211 Wis. 565, 568, 248 N. W. 408, the court said:

"While it is the established law of this state that a person may be convicted of rape on the uncorroborated testimony of a prosecutrix if the jury is satisfied as to the truth of her testimony beyond a reasonable doubt, all courts recognize the obvious danger of convicting on such uncorroborated testimony. *O'Boyle v. State,* 100 Wis. 296, 75 N. W. 989; *Wilcox v. State,* 102 Wis. 650, 78 N. W. 763; *Hofer v. State,* 130 Wis. 576, 110 N. W. 391; *Donovan v. State,* 140 Wis. 570, 122 N. W. 1022; *Ganzel v. State,* 185 Wis. 589, 201 N. W. 724; *Rice v. State,* 195 Wis. 181, 217 N. W. 697."

In *O'Boyle v. State,* 100 Wis. 296, 300, 75 N. W. 989, the court said:

"Where the testimony of the prosecuting witness bears upon its face evidence of its unreliability, to sustain a con-

viction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime."

In *Cleaveland v. State, supra,* the court reversed the judgment under sec. 251.09, Stats., to the end that a new trial be had.

There are elements of unreliability in the testimony of the prosecutrix in the instant case, but it is the settled rule in this state that if there is any credible evidence, which in any reasonable view supports a verdict in a criminal case, it cannot be disturbed on appeal. *State v. Fischer,* 228 Wis. 131, 134, 279 N. W. 661, and cases cited.

In connection with defendant's motion for a new trial on the grounds indicated therefor and to which reference is made in the statement preceding the opinion, it appears that on the trial of the case of State v. Shelley, which came on for trial in the same court the day following the instant case, and in which the prosecutrix testified at the preliminary examination had on July 15th that she had had sexual intercourse with Shelley during the week the carnival was at Amery, on the trial of that action, she completely repudiated her testimony given at the preliminary hearing and testified that she did not have sexual intercourse with defendant Shelley. In other words, she perjured herself, either in the testimony she had given at the preliminary hearing or on the trial. She understood the meaning of sexual intercourse, in fact, she was very specific in her statement that Shelley put his sexual organ in her sexual organ. It appears that upon the cross-examination of the prosecutrix in the instant action, defense counsel was not permitted to even make reference to the other two actions in which the prosecutrix had testified at the preliminary examinations.

As heretofore stated, in the instant action, at the preliminary hearing, the prosecutrix was unable to fix the date of her alleged intercourse with the defendant. She was unable

to say whether it was the 6th, 7th, or 8th of July. To say the least, it is a very unusual occurrence to have a prosecutrix so indefinite as to her dates of alleged intercourse. Possibly her confusion as to dates is accounted for by the fact that she was testifying on the same date in three separate preliminary examinations as to separate acts of intercourse with three different men. It was only upon the trial of the instant action that she was able to fix the date of the alleged intercourse with defendant Crabtree. This unusual situation called for a searching cross-examination of the prosecutrix as to the testimony she had given at the preliminary examinations in the three separate actions.

Upon the whole record as here presented, we think it probable that justice has miscarried in the instant action, and under the authority conferred by sec. 251.09, Stats., the judgment should be reversed to the end that a new trial may be had.

*By the Court.*—Judgment reversed. The warden of the state prison at Waupun is directed to deliver the defendant into the custody of the sheriff of Polk county for further proceedings according to law.