HOWLAND, Plaintiff in error, v. STATE, Defendant in error.

*No. State 134. Argued April 1, 1971.—Decided May 7, 1971.*
(Also reported in 186 N. W. 2d 319.)

164

For the plaintiff in error there was a brief and oral argument by *Franklyn M. Gimbel* of Milwaukee.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *E. Michael McCann,* district attorney of Milwaukee county.

HANLEY, J. We are presented with the following issues:

(1) Did the trial court err in admitting certain physical evidence;

(2) Did the trial court err in denying defendant a new trial in the face of unexplained exculpatory evidence;

(3) Did the trial court err in restricting cross-examination of a state expert testifying in defendant's sex deviate hearing about his opinions which had a hearsay foundation; and

(4) Does the Wisconsin Sex Crimes Law provide cruel and unusual punishment proscribed by the United States Constitution?

*Admissibility of certain evidence.*

The defendant contends that his automobile and work boots found at his residence by the investigating officers were erroneously received in evidence and that the error was prejudicial.

After the hearing on the motion to suppress, the trial court declined to make any ruling on the admissibility of the evidence sought to be suppressed. Later, during the course of the trial, the court ruled:

(1) The search by the Milwaukee county sheriff's deputies was valid;

(2) The arrest by the Milwaukee county sheriff's deputies was valid; and

(3) The search and seizure by the Milwaukee city police was valid.

The car can be eliminated from the problem of search and seizure because it was not discovered in the course of a search. It was standing in plain view outside the defendant's house. Since no search was required in order to discover the car, the question of its admissibility under the exclusionary rule [5] of the fourth amendment to the United States Constitution does not even arise.

The boots present a different problem. The testimony of deputy O'Neil was that upon being asked if he owned any boots, the defendant went to his bedroom, returned to the kitchen with his boots and showed them to the officers. This was corroborated by detective Cole who stated that the work boots were already in plain view in the kitchen when he arrived at the apartment.

The defendant and his wife denied this, stating that some police officer walked into the bedroom and got the boots himself.

If the testimony of the officers was believed by the trial court, then no search at all occurred within the meaning of the fourth amendment.

In this case the trial court, after listening to the evidence on the motion to suppress, reserved his ruling on that issue. Later, at trial, when it became apparent that the ruling was necessary, the court stated his ruling in terms of ultimate findings of fact and did not make specific evidentiary findings. He stated that the boots were admissible, but he did not allude to the evidence or

[5] *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. 2d 1081.

testimony from the pretrial hearing which he felt justified his conclusion that the boots were admissible.

As a result of the trial court's inadequate findings, this case comes within the rule set forth in *Barnes v. State* (1964), 25 Wis. 2d 116, 122, 130 N. W. 2d 264, where this court said:

"In the instant case we do not have the benefit of any finding of fact by the trial court with respect to whether or not defendant voluntarily consented to the search. We, therefore, must make our own independent determination of this factual issue upon the evidence before us. . . ."

In this case the evidence adduced at the pretrial hearing on the motion to suppress would support only one of two possibilities. Either the defendant voluntarily produced the boots himself or he consented to a search in which the boots were discovered. The defendant, of course, stated that the officers made a search without his permission. However, on cross-examination he was unable to state which officers made the search or even which one picked up the boots. The defendant's wife attempted to corroborate his claim that a nonconsensual search was made, but her credibility was rendered doubtful by numerous gaps and inconsistencies in her version of what occurred while the police officers were present. We, therefore, conclude, after an independent review of the record on this point, that the trial court's ruling on the admissibility of the boots was correct and supported by adequate credible evidence.

Next the defendant contends that the admission of the boots and car in this case violated the most fundamental rule of real evidence in that no adequate foundation was laid to show the relevance of these items.

The defendant here claims the foundation in this case was inadequate. The victim did not testify at the time these items were introduced. The defense and the state

entered into a stipulation that when she was shown the boots and car at the police station shortly after the defendant's arrest, she could not identify the boots and car as being those of her abductor. A second stipulation was made which stated that the victim had said, upon seeing the car and boots, "Yes, that could be the car and those could be the boots that I saw on the date that I was given a ride."

The general rule regarding the foundation necessary for the admission of real evidence is that a witness' inability to make a positive identification of the objects proffered does not preclude their admission. It is generally held that the witness' lack of certitude as to whether the objects offered are the ones he saw on prior occasion goes to the weight the jury should give to the evidence, but lack of certitude does not preclude admissibility. 1 Wharton, *Criminal Evidence* (12th ed.), pp. 359, 361, sec. 181; *State v. Olek* (1970), 288 Minn. 235, 179 N. W. 2d 320.

We think that although the actual admission of the evidence was error because at the time of admission the state admitted that the victim was unable to identify the objects, such error (lack of foundation) was cured by the second stipulation wherein it was agreed that she had said the items "could be" the ones she saw.

*Denial of motion for new trial.*

At the close of the state's case, the defendant made a *Brady* motion [6] asking the district attorney's office to turn over to the defense any evidence which it might have which would tend to exculpate the defendant. The state complied with the request by delivering to the defendant's attorney the entire file which the Milwaukee police department compiled in the course of investigating

[6] *Brady v. Maryland* (1963), 373 U. S. 83, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215.

several child molestations which occurred in Milwaukee during the summer of 1968.

The victim's description of her assailant and the interviewing officers' description of the "other suspect" matched very closely. The defense counsel read to the jury the victim's description of her assailant, but for some inexplicable reason he failed to read to them the police description of the "other suspect." Instead he waited until the trial was over and then made a motion for a new trial based on the assertion that:

". . . the state did not produce any explanation for the exculpatory material that was disclosed during the examination of the investigative materials [police file on suspects] in this case . . ."

In short, the defendant's theory was that because the state had uncovered two likely suspects, it not only had to prove one *guilty* beyond a reasonable doubt but also had to prove the other *innocent* beyond a reasonable doubt. Defendant cites no authority for this proposition; and we find no authority so holding.

We find no error in the trial court's denial of the defendant's motion for a new trial because the motion was based on an invalid proposition of law.

### Adequacy of the Huebner hearing.

Pursuant to the provisions of sec. 959.15 (1), Stats.,[7] the defendant was committed to the custody of the department of health & social services for a presentence examination. Upon the conclusion of that examination, a *Huebner* hearing was held to determine whether the defendant should be sentenced according to law as provided in sec. 975.05, or whether he should be committed to the department for specialized treatment under the Sex Crimes Law. At that hearing a psychiatrist and a

[7] Sec. 959.15 (1), Stats., has been renumbered, and the pertinent section is now sec. 975.01.

psychologist from the department of health & social services testified that they had examined the defendant and it was their opinion that he was a sex deviate and in need of specialized treatment. The defendant's own court-appointed psychiatrist did not testify, but he filed a report with the court stating that it was his conclusion that the defendant was a sex deviate.

On cross-examination by the defendant's attorney, both of the expert witnesses from the department admitted that their examination of the defendant was not satisfactory in that he denied that he was guilty of the charge in this case and refused to talk with them about the case. They both admitted that their conclusion that the defendant was a sex deviate and in need of treatment was based in large part on the fact that the jury in this case had found him guilty.

The defendant now contends that since the two experts did not observe his trial firsthand, their knowledge of his conviction is based on hearsay. He further argues that their opinion that he was in need of specialized treatment was therefore based in part on hearsay, and for that reason the opinion was not competent evidence. Since the opinion was not competent evidence, a sentence imposed on the basis of such evidence is a nullity.

This argument is without merit for two reasons: First, the fact of the defendant's conviction is a matter of public record, and such records are a well-recognized exception to the hearsay rule. McCormick, *Evidence* (hornbook series), p. 614, sec. 291. Secondly, sec. 959.15 (1) and (2), Stats., now secs. 975.01 and 975.02, clearly envision that the department's experts will be informed of the defendant's conviction and consider the same as one of the many factors on which their opinion will be premised. Sec. 975.01 provides in part as follows:

". . . The court and all public officials shall make available to the department upon its request all data in their possession in respect to the case."

We find no merit to the defense claim that the trial judge erred in restricting defense counsel's cross-examination of the state's expert who testified to an opinion based on the conviction record.

*Constitutional question of cruel and unusual punishment.*

The defendant attacks his commitment as a sex deviate upon the ground that the statute provides for cruel and unusual punishment proscribed by the United States Constitution.

Defendant charges that in Wisconsin a defendant classified as a sex deviate may be institutionally committed for life when the substantive offense for which he was convicted calls for a limited period of confinement. In this case, the defendant could have been imprisoned for a term of ten years. Now he faces the prospect of a lifetime in a state institution.

The defendant obviously overlooks the provisions of sec. 959.15 (12), (13), (14), (15) and (16), Stats. In essence, these subsections provide that the defendant here must be discharged at the expiration of the maximum term for which he could have been sentenced to a penal institution, unless the department has previously made an order that he remain subject to its control for a greater period and has obtained approval of that order from the committing court. Upon such a review, the committing court may direct his continued control by the department or may discharge him. If the court affirms the department order, the defendant may appeal to this court, which may either affirm or reverse the committing court, or direct the taking of additional evidence by the trial court.

The procedure above described is not designed to determine the criminal punishment to be imposed but to

determine whether treatment and the protection of the public is necessary.[8]

We conclude that a commitment under the Wisconsin Sex Crimes Law does not constitute cruel and unusual punishment.

We find no error in the trial court's rulings on the admission of evidence. We also conclude that the trial judge did not abuse his discretion in denying defendant's motion for a new trial. We do not believe the Wisconsin Sex Crimes Law provides for cruel and unusual punishment.

*By the Court.*—Judgment and order affirmed.

[8] *Huebner v. State, supra; Buchanan v. State* (1969), 41 Wis. 2d 460, 164 N. W. 2d 253.