SYVOCK, Plaintiff in error, v. STATE, Defendant in error.

*No. State 13. Submitted under sec. (Rule) 251.54 October 31, 1973.—Decided December 21, 1973.*
(Also reported in 213 N. W. 2d 11.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

WILKIE, J.   Three issues are involved in the review:

1. Is the evidence sufficient to support the judgment of conviction?

2. Should a new trial be granted in the interest of justice?

3. Is the evidence sufficient to support the finding that defendant was sexually deviated and in need of specialized treatment?

*Sufficiency of the evidence.*

The problem in this case is that the key testimony of the minor female child varied somewhat as given at the preliminary examination and later at the trial.

We see no reason to set forth the details of her testimony. We have examined this testimony in full as given first at the preliminary examination and again at the trial.

A conviction for taking indecent liberties with a child can rest upon the uncorroborated testimony of the minor on the trial.[1] "This court recognizes [however], that utmost restraint must be used in weighing the evidence in a case of this nature because of the great difficulty the defendant faces in defending himself from such a charge and also because there ordinarily are no witnesses other than the parties themselves and that frequently the only

[1] *Rice v. State* (1928), 195 Wis. 181, 217 N. W. 697; *Varga v. State* (1930), 201 Wis. 579, 230 N. W. 629; *State v. Perlin* (1955), 268 Wis. 529, 68 N. W. 2d 32.

possible defense is a direct denial." [2] This court has said that "[w]here the testimony of the prosecuting witness bears upon its face evidence of its unreliability, to sustain a conviction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime." [3] This court has also said that the state does not have the burden of producing every possible eyewitness and the absence of an available witness does not raise an inference that his testimony would have been unfavorable to the state's case or render the testimony of other witnesses insufficient to sustain a finding of guilt. [4]

Although there is testimony indicating the minor female victim claimed first that the defendant put one finger in her vagina and later said it was two, although she was confused about the particular day when the alleged offense took place, and although she testified at the preliminary that she told her mother about this several weeks later and at the trial she said it was within a few days, these inconsistencies do not mean that her testimony was inherently incredible.

The defendant contends that the trial court erred in holding that the testimony of the minor female victim was credible and free from inconsistencies. We have often said that the credibility of witnesses and the weight to be given testimony is for the trier of fact. This is especially true because the trier of fact has the opportunity to observe their demeanor on the witness stand. [5]

In its decision the trial court did not indicate it found no inconsistencies in the minor's testimony. The court said:

---

[2] *Grayson v. State* (1967), 35 Wis. 2d 360, 366, 367, 151 N. W. 2d 100.

[3] *O'Boyle v. State* (1898), 100 Wis. 296, 300, 75 N. W. 989.

[4] *Quinn v. State* (1971), 50 Wis. 2d 96, 183 N. W. 2d 61.

[5] *State v. Christopher* (1969), 44 Wis. 2d 120, 127, 170 N. W. 2d 803.

". . . Attention has been called to the court of three major inconsistencies with her story. These are considered by the court not to be crucial, and her story is more free from conflicts than the testimony of most witnesses. Inconsistencies, of course, are called to the court's attention or the jury's attention for the purposes of attacking credibility. . . . However, it is my experience that it is virtually impossible for a witness to give extensive testimony covering a great many details and circumstances that is completely and absolutely consistent with a version given some six months or more before. The crucial aspects of this case were spelled out thoroughly, credibly; and they are without dispute."

Thus the court indicated, as trier of the facts, that it did not find that the inconsistencies between the testimony at the preliminary hearing and the testimony on the trial pointed out by defense counsel affected the credibility of the young witness. The inconsistencies were minor. A child cannot be expected to remember exact dates and time sequences after almost a year has elapsed and at the preliminary hearing no one pressed the girl on the matter of how many fingers were used. ". . . It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial." [6]

The real issue then is whether the testimony of the minor given at the trial is so inherently and patently incredible that it cannot support the trial court's verdict. The defendant contends that her testimony that she was screaming and counting the time while watching the clock and yet did not know what time it was or wake her girl friend's mother is patently incredible. This line of testimony was developed during cross-examination. Such responses were suggested by the questions of defense

---

[6] *Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101.

counsel. An eleven or twelve year old is still easily suggestible. The testimony as given does not make her basic statement of how the incident happened incredible. It was for the trier of facts to evaluate.

Those cases in which this court has found testimony incredible have involved situations where the prosecuting witness had an apparent motive to falsify [7] or where the description of the crime was improbable, as when a young girl said a man took indecent liberties with her person twice on separate occasions not six feet off a frequently traveled highway at midday.[8]

The defendant contends that the trial court erred in not giving enough consideration to the fact that the victim's mother did not actively press charges and apparently never did complain to the police. The defendant contends this reflects adversely on the credibility of the witness because it indicates that the mother did not believe her daughter's story to be truthful. Although the trial court decision did not mention this factor directly, we must assume that all possible doubts were resolved in favor of the verdict.

The prosecution called the victim's mother and she testified that she could not remember dates and could not indicate exactly when her daughter had informed her of the incident. But she indicated it was sometime around Labor Day and that she immediately called the district attorney's office. The mother testified that she and her husband spoke with the defendant and that he did not deny the incident. He only indicated he had been drinking. On cross-examination the mother testified that when she spoke to the defendant she said that she would not press charges because "we didn't want to put an innocent man in jail if it wasn't true." Later she testified

---

[7] *Wilcox v. State* (1899), 102 Wis. 650, 78 N. W. 763; *Ganzel v. State* (1925), 185 Wis. 589, 201 N. W. 724.

[8] *Rice v. State, supra,* footnote 1.

that she never complained to the police because she didn't want to put her daughter through a trial. She said: "I had no doubts that she was telling the truth, but, like I said, I just didn't feel like that I'd like to have her put through all this unless it was absolutely necessary, and when I heard about the other children that were being molested—." At that point the defense attorney cut off any further statement.

In any case, the mother's conclusion expressed either in words or actions is a mere opinion as to the veracity of the minor witness and as such would be inadmissible. It is up to the trier of fact to reach his own conclusion as to the credibility of the witness from her testimony and the surrounding circumstances. It is apparent that the child did tell her parents within a short time of the incident and her mother indicated that she had informed the office of the district attorney.

The defendant also urges that prejudicial error occurred when the trial court restricted the direct examination of Officer Gorlewski. This police officer was called as a defense witness. Defense counsel asked the officer whether or not he knew if the victim's mother had ever called the police department to make a complaint against the defendant. The district attorney objected to this question as immaterial and the court sustained the objection. Counsel for the defense did not make an offer of proof or attempt in any way to indicate why he felt this question was material to the defense of his client. He asked one or two more questions of the officer and then ended his examination. In the defendant's brief he indicates that the theory of the defense in calling this witness was to show that defendant's alleged actions were brought to the attention of the police not by the victim or her parents, but by an off-duty policeman, "who overzealously sought to arrest defendant, not because of his alleged conduct, but because of his past

record of sexual misconduct." This "theory" was never made known to the trial judge at any time. Without such an explanation it lay within the discretion of the trial court to conclude that the information sought was irrelevant to the issues of the case and without an offer of proof, claim of error by the trial court is without merit.[9] It is certainly not clear what testimony the officer would have given without some explanation from counsel. Under these circumstances we do not think the defendant can predicate error on this alleged restriction of direct examination of the police officer. And as the state contends, the motivation of those who brought charges does not reflect on the veracity of the minor witness.

### A new trial in the interest of justice.

From the above discussion, even if lack of proper preservation of error is ignored, we cannot conclude that it is probable that justice has miscarried in this case or that the defendant would be acquitted if given a new trial.

### Sufficiency of the evidence on issue of deviancy.

The defendant requested a hearing be held pursuant to sec. 975.06 (1), Stats., to determine if he needed specialized treatment. This hearing was held on December 23, 1971. Two psychiatrists testified that in their opinion the defendant was sexually deviated and in need of treatment at Central State Hospital.

On the issue of whether the defendant needs specialized treatment, the burden of proof is upon the state to satisfy the trier of fact to a reasonable certainty by the great

[9] *Sturdevant v. State* (1970), 49 Wis. 2d 142, 181 N. W. 2d 523; *State v. Becker* (1971), 51 Wis. 2d 659, 188 N. W. 2d 449.

weight of the credible evidence.[10] The importance to the defendant of this determination has been recognized by this court in increasing the safeguards attached to such determination. At the present time the defendant is entitled to have a jury make the determination.

Contending that the state failed to meet its burden of proof, the defendant asserts that the opinion of both psychiatrists was not based on "scientific evidence" but on the defendant's past criminal record. The brief of the defendant emphasizes that neither psychiatrist performed any psychological testing of the defendant but only interviewed the defendant.

The entire record reveals a sufficient basis for the decision of the trial court. Some testing was done of the defendant at Central State Hospital. Dr. Fosdal, a witness for the state, testified that the psychologist Dr. Miller did the psychological testing, the Army General Intelligence Test and a "sexual inventory test." Dr. Fosdal indicated that his estimation of the general intelligence of the defendant corresponded to the report of Dr. Miller based on the tests. This court has recognized that a doctor's opinions are dependent in part upon facts found by others upon whom they rely in their practice and that psychiatrists customarily rely on the reports of psychologists in aid of diagnosis.[11] Dr. Fosdal further testified that no particular psychological tests can be given to a person that will "prove" that he is a pedophiliac (one who has a propensity to engage in sexual conduct with children). Thus the doctor's opinion was based in large part upon the social history of the defendant, including his prior convictions. This court in *Howland v. State*[12] recognized that the statutes governing commitment for treatment envisioned that the de-

[10] *Goetsch v. State* (1969), 45 Wis. 2d 285, 172 N. W. 2d 688.

[11] *Roberts v. State* (1969), 41 Wis. 2d 537, 549, 164 N. W. 2d 525.

[12] (1971), 51 Wis. 2d 162, 186 N. W. 2d 319.

partment would be informed of the defendant's conviction and consider it as one of the factors on which its opinion would be premised. In *Howland* the psychiatrists indicated that the defendant had refused to talk with them about the case and that their conclusions that he was sexually deviated were based in large part on the fact that the jury had found the defendant guilty. This court did not find the evidence insufficient in the *Howland Case.*

Dr. Fosdal also testified that from a personal interview a psychiatrist can determine whether the patient is suffering from an organic dysfunction or is apparently normal. He testified that the defendant appeared completely normal. Dr. Fosdal testified that the defendant denied that he had any sexual problems and that this information came solely from the presentence investigation report furnished to the hospital which contained a social history and a record of past convictions. Dr. Fosdal concluded that because of the defendant's refusal to acknowledge that he had any problems, he was a poor candidate for out-patient treatment. Both psychiatrists diagnosed the defendant as suffering from an inadequate personality and pedophilia.

Defense counsel on cross-examination did determine that Dr. Fosdal did not explore to any great extent the relationship of the defendant's alleged drinking problem to his sexual problems. Defense counsel, when questioning Dr. Schaeffer, pointed out the long interval of five or six years since the last conviction of the defendant. Dr. Schaeffer testified that the longer the interval between episodes the less significant the behavior. But the doctor then said that the nature of the behavior itself is quite serious and that a five-year interval does not make the behavior insignificant.

Granted that psychiatry is an inexact science, we think this record is sufficient to support the decision of the

court. The state has met its burden of convincing the trier of fact to a reasonable certainty by the great weight of the credible evidence. It was not improper to rely on the past social history of the defendant including his past conviction record. The record reveals that this was not the only factor considered, although it naturally was an important factor.

*By the Court.*—Judgment affirmed.