STATE of Wisconsin, Plaintiff-Respondent,

v.

Phillip B. MURPHY, Defendant-Appellant.†

Court of Appeals

*No. 94–0101–CR. Submitted on briefs September 15, 1994.—Decided October 26, 1994.*

(Also reported in 524 N.W.2d 924.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder JJ.

NETTESHEIM, J.  Phillip B. Murphy appeals from a judgment of conviction of one count of armed robbery contrary to § 943.32(1)(b) and (2), STATS., one count of attempted robbery contrary to §§ 939.32 and 943.32(1)(a), STATS., and one count of intimidation of a witness contrary to §§ 940.44 and 940.45(1), STATS. Murphy was convicted as a repeat offender under § 939.62(2), STATS., on all counts. On appeal, Murphy argues that the trial court erred when it admitted evidence of ten prior crimes committed by him in 1987. We conclude that the trial court did not erroneously exercise its discretion in admitting this evidence. We affirm the judgment of conviction.

## FACTS

We begin with the facts concerning the charged offenses. The first alleged offense occurred on January 29, 1992, at approximately 7:00 p.m. That evening, a twenty-year-old female employee of a One Hour Martinizing in Brookfield was alone vacuuming the store preparing to close when a man wearing black gloves and a beige or tan knit cap entered the store and told her to open the register. When the employee told the man she could not open the register, the man walked towards her and grabbed her right arm and began pushing the register buttons. The man was unable to open the register, and the employee grabbed a nearby phone and told the man that she was going to call the police. The man said he was getting angry with her and pulled the receiver off of the telephone cord. As the man continued to try to force open the register, the employee pounded on a wall shared with the store next door. The man ran from the store, taking the rest of the

phone cord with him. He never succeeded in opening the register and did not take any money.

That night, the employee described the man to the police as having a medium build, a regular nose, a lot of stubble on his face and "chubbiesh cheeks." However, she was unable to describe his height, hair, complexion, mouth, teeth, ears or whether he had any distinctive facial scars. On March 16, 1992, the employee viewed an array of six photographs, including one of Murphy. She picked out a photograph that she thought looked like the suspect, but could not make a positive identification. On March 24, 1992, the employee identified Murphy in a line-up as the man who attempted to rob the business on January 29, 1992. She said she "recognized him when he first walked through the door." She explained that Murphy's walk, stance, face, build and mumbling speech were the same as the man who entered the business.

The second alleged offense occurred on March 11, 1992, at approximately 7:00 p.m. That evening, two eighteen-year-old female employees were working at Dry Cleaning U.S.A. in Brookfield when a man, wearing a ski jacket zipped to cover his nose and a knit cap pulled down to his eyebrows, entered and walked past the counter to the cash register. While holding a knife, he approached the employee at the register and said, "Give me the money, just give me the money." She opened the cash register and he grabbed $25 and asked where the rest of the money was. She pointed him to the back, and he headed to another counter and took a pile of cash and checks that had just been taken out of the register. On his way out the door, the man told the employees to just call the police, and "everything will be okay."

After examining the scene of the Dry Cleaning U.S.A. robbery, the police found a footprint that did not match the shoes of the store manager or the two employees present the night of the robbery. A state crime analyst matched a pair of Murphy's shoes to the footprint. Neither of the employees was able to identify Murphy in a police line-up, but both employees identified a jacket and knit cap seized from Murphy's brother's residence as similar to those worn by the robber.

Murphy was charged with both the January 1992 attempted robbery of the One Hour Martinizing and the March 1992 robbery of Dry Cleaning U.S.A. Murphy denied responsibility for both robberies. At trial, the State sought to introduce evidence outlining ten prior offenses committed by Murphy in 1987 to establish his identity as the perpetrator of the 1992 robberies. The trial court allowed the State to introduce testimony summarizing the circumstances surrounding the 1987 offenses. The trial court limited the testimony to only one witness, the detective who took Murphy's confessions. The detective related the incidents to the jury in the manner they were recounted to him by Murphy. We briefly recap each.

On September 19, 1987, Murphy walked backwards into Freshy's Pizza in Brookfield wearing a green hooded sweatshirt and sunglasses. He told the young female employee to open the register because she was being robbed. When she opened the cash register, he took all of the money and left for his car which was parked across from the shopping center.

On September 23, 1987, Murphy entered a Fannie Mae candy store in Brookfield wearing sunglasses, told the female employee to open the register, then took

over $100 and left for his car which was parked around the corner.

On September 27, 1987, Murphy entered Bear's Dugout in Waukesha and saw money that was left on the counter. The young female employee came to the counter, and Murphy said he may have had a knife when he took the money. He then left for his car which was parked behind Bear's Dugout.

On October 1, 1987, Murphy entered Fabricare Dry Cleaning in Waukesha and asked the elderly woman working there to open the cash register. He took $100 and left for his car which was parked around the corner.

On October 3, 1987, Murphy hopped through a service window at Scrima's Pizza in Waukesha and told the female employee to open the register. Murphy said the employee was confused, so he opened the drawer himself and took approximately $400. Two men came out of the back area and confronted Murphy, who had a knife in his hand. Murphy became frightened and told the men to stay away from him before he fled out the window to his car which was parked up the next street. Murphy was wearing a green jacket with the hood over his head.

On October 6, 1987, Murphy, wearing a baseball cap, entered Dry Cleaning U.S.A. in Brookfield and opened the cash register. When the young female employee asked him what he was doing, he replied that he was taking the money. He took over $100 and left for his car which was parked around the corner.

On October 8, 1987, Murphy, wearing sunglasses, entered the Submarine Sandwich Shop in New Berlin, and told the female employee to open the register or he would jump over the counter and do it himself. Murphy said she seemed too confused to do anything, so he

515

decided to leave. He went to his car which he had left by a gas station near some trees.

On October 8, 1987, Murphy entered Dry Cleaning U.S.A. in Brookfield and told the female employee that he was taking the money. Murphy opened the register, took the money and left for his car which was parked in the lot.

On October 10, 1987, Murphy, wearing a green-and-black checked coat, entered Bear's Dugout in Waukesha and told the young male employee to open the register. Murphy said he may have had a knife in his hand when he took a bank bag with approximately $150 from the register inside and left. The employee followed Murphy outside until Murphy told him to stop and stay away. Murphy's car was parked in a parking lot nearby.

Finally, on October 15, 1987, Murphy, wearing an off-pink pullover shirt and holding a knife, entered Fabricare Dry Cleaning in Delafield and demanded the money from the young female employee. When the employee opened the register, he took over $100 and then left for his car which was parked around the corner.

Murphy was taken into custody for the 1987 offenses on October 21, 1987, and was sentenced and imprisoned until his parole on June 19, 1991. The evidence of the 1987 crimes was admitted over counsel's objection, and in October 1992, Murphy was convicted of the January and March 1992 offenses.

## DISCUSSION

On appeal, Murphy argues that the 1987 offenses were not sufficiently similar to the January and March 1992 charged offenses to satisfy the "identity" exception to the general rule under § 904.04(2), STATS.,

prohibiting the introduction of evidence of other crimes, wrongs or acts to show that a person has acted in conformity with those acts.

Whether to admit evidence of other acts is within the discretion of the trial court. *State v. Kuntz,* 160 Wis. 2d 722, 745, 467 N.W.2d 531, 540 (1991). Our review of admission of other acts evidence is limited to whether there was an erroneous exercise of discretion by the trial court. *See State v. Plymesser,* 172 Wis. 2d 583, 591, 493 N.W.2d 367, 371 (1992). To admit evidence of a prior crime, the trial court must have determined that the proffered evidence was admissible under both § 904.04(2), STATS., and § 904.03, STATS. *Plymesser,* 172 Wis. 2d at 591, 493 N.W.2d at 371.

Evidence of other acts is not permitted under § 904.04(2), STATS., when the only inference that can be drawn from that evidence is that " 'because a defendant committed prior act X, he is therefore of such a character and disposition to commit present act Y.' " *Id.* at 592, 493 N.W.2d at 371 (quoting *State v. Fishnick,* 127 Wis. 2d 247, 254, 378 N.W.2d 272, 276 (1985)). If the other acts evidence is offered for a proper purpose, " 'the evidence is subject only to the general strictures limiting admissibility such as [§§ 904.02 and 904.03, STATS.].' " *Plymesser,* 172 Wis. 2d at 592, 493 N.W.2d at 371 (quoting *Huddleston v. United States,* 485 U.S. 681, 688 (1988)).

If a trial court determines that the other acts evidence is admissible under § 904.04(2), STATS., it must then determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

517

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Section 904.03, STATS.; *see Plymesser,* 172 Wis. 2d at 592, 493 N.W.2d at 372.

### USE OF THE 1987 PRIOR OFFENSES TO PROVE IDENTITY

The State sought to use evidence of the 1987 crimes to establish Murphy's identity to prove he committed the January 1992 attempted robbery and the March 1992 robbery. We conclude that the trial court properly exercised its discretion when it allowed evidence of the 1987 offenses to be presented to the jury to establish Murphy's identity.

Section 904.04(2), STATS., provides:

> OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of other acts need only be relevant to one of the purposes enumerated in § 904.04(2) before it is admissible. *See State v. Speer,* 176 Wis. 2d 1101, 1114, 501 N.W.2d 429, 433 (1993). A trial court's decision to admit evidence of other acts will be upheld if there is a reasonable basis for it. *Plymesser,* 172 Wis. 2d at 591, 493 N.W.2d at 371.

When evidence of other acts is being offered to prove a defendant's identity, there should be such a

concurrence of common features and so many points of similarities between the crimes charged that it can be said that the other acts and the present act constitute "the imprint of the defendant" before it is admissible. *Kuntz,* 160 Wis. 2d at 746-47, 467 N.W.2d at 540. The threshold measure for similarity to establish identity is nearness of time, place and circumstance of the other act to the alleged crime. *Id.*

In the trial court, the State pointed to the similarities in the time, place and circumstances between the 1987 crimes and the 1992 alleged offenses. The State argued that the 1987 crimes all occurred within a one-month time span from September 19 to October 15, 1987, and because Murphy was in continuous custody from October 21, 1987 until June 19, 1991, the time gap between the 1987 crimes was only seven months for the January 1992 attempted robbery and nine months for the March 1992 robbery. Periods of confinement are not considered in determining the nearness in time between prior offenses and the crimes charged. *See Speer,* 176 Wis. 2d at 1117, 501 N.W.2d at 434.

The State directed the trial court's attention to the location of the 1987 crimes. Of the ten prior crimes, four occurred in Brookfield, four in Waukesha, one in Delafield and one in New Berlin—all in Waukesha county. Both of the 1992 charged offenses were in Brookfield, the same general geographic location as the 1987 crimes.

The State also contended that the 1987 crimes had similarities in their circumstances to the 1992 alleged offenses. The 1987 crimes and the 1992 charged offenses all occurred at small business establishments while they were open to the public. Like the robbery offenses in this case, four of the 1987 crimes occurred at

dry cleaning businesses. In nine of the 1987 crimes, only one clerk was visible when Murphy entered the business, similar to the January 1992 attempted robbery.

In all of the 1987 crimes to which Murphy confessed, he was the sole robber and did not harm any of the employees. Similarly, both of the 1992 charged offenses involved a lone perpetrator who did not harm the employees. In the 1987 crimes, when Murphy displayed a weapon, it was a knife. Similarly, in the March 1992 charged offense, a knife was the weapon used.

Given these similarities between the 1987 crimes and the charged offenses, the trial court had a reasonable basis for concluding that evidence of the 1987 crimes was admissible to establish Murphy's identity as the perpetrator of the 1992 alleged offenses. *See Plymesser,* 172 Wis. 2d at 591, 493 N.W.2d at 371. Although courts have been cautioned in *Whitty v. State,* 34 Wis. 2d 278, 297, 149 N.W.2d 557, 565-66 (1967), *cert. denied,* 390 U.S. 959 (1968), to use evidence of other acts sparingly and only when reasonably necessary, such evidence has generally been found admissible when it is offered for any purpose other than inadmissible character evidence as prohibited under § 904.04(2), STATS. *State v. Johnson,* 184 Wis. 2d 324, 341, 516 N.W.2d 463, 468 (Ct. App. 1994).

## *PREJUDICIAL EFFECT OF THE 1987 OFFENSES*

Once the trial court has determined that evidence of other acts is admissible for a proper purpose under § 904.04(2), STATS., it must consider whether the risk of unfair prejudice substantially outweighs the probative

value of the other acts evidence under § 904.03, STATS. *Plymesser,* 172 Wis. 2d at 592, 493 N.W.2d at 372. The trial court may exclude otherwise relevant evidence if its risk of unfair prejudice outweighs its probative value. Section 904.03.

■■

We conclude that the probative value of the other acts evidence to prove Murphy's identity outweighed its prejudicial effect. By its very nature, nearly all evidence operates to the prejudice of the party against whom it is offered. *Johnson,* 184 Wis. 2d at 340, 516 N.W.2d at 468. The test is whether the resulting prejudice of relevant evidence is fair or unfair. *Id.* Exclusion of evidence is only warranted when it is likely that admitting the evidence would be unfairly prejudicial in its effect by influencing the jury by improper means, appealing to its sympathy, arousing its sense of horror, promoting its desire to punish or otherwise causing the jury to base its decision on extraneous considerations. *State v. Bedker,* 149 Wis. 2d 257, 266-67, 440 N.W.2d 802, 805 (Ct. App. 1989).

Any risk of unfair prejudice against Murphy was substantially minimized by the manner in which the trial court presented the evidence to the jury. First, when the trial court granted the State's motion to admit evidence of the 1987 crimes, the trial court limited the State's presentation of the evidence to the testimony of one person, the detective who took Murphy's confessions to the crimes, rather than parading victim after victim in front of the jury.

■■

Second, the trial court gave the jury two separate cautionary instructions on the permissible use of the evidence of the 1987 crimes. When the jury is instructed that evidence showing other crimes, wrongs

or acts is admissible to prove identity, any danger of unfair prejudice is alleviated. *See Speer,* 176 Wis. 2d at 1118, 501 N.W.2d at 435.

The first instruction was given just before the detective testified about Murphy's confession to the 1987 offenses. The trial court gave the following instruction:

> Ladies and gentlemen, evidence is about to be received regarding other crimes committed previously by the Defendant for which the Defendant is not on trial; specifically, evidence will be received that the Defendant committed four acts of robbery, one act of attempted armed robbery, and five acts of completed armed robbery.
>
> If you find that this conduct did occur, you should consider it only on the issue of identity. You may not consider this evidence to conclude that the Defendant has a certain character or a certain character trait and that the Defendant acted in conformity with that trait or character with respect to the offenses charged in this case.
>
> The evidence will be received on the issue of identity; that is, whether the prior conduct of the Defendant is so similar to the offenses charged that it tends to identify the Defendant as the one who committed the offenses. You may consider this evidence only for the purpose I have described, giving it the weight you determine it deserves. It is not to be used to conclude that the Defendant is a bad person and for that reason is guilty of the offenses charged here.
>
> With that in mind, ladies and gentlemen, we'll continue with the testimony of this witness.

The trial court gave a nearly identical cautionary instruction regarding evidence of the 1987 crimes

immediately before the jury was sent to deliberate. We presume that a jury follows all instructions that it receives. *State v. Truax,* 151 Wis. 2d 354, 362, 444 N.W.2d 432, 436 (Ct. App. 1989). The fact that the trial court gave this limiting instruction on the permissible use of the 1987 crimes, not just once, but on two separate occasions, served to alleviate the potential for unfair prejudice to Murphy. *See Speer,* 176 Wis. 2d at 1118, 501 N.W.2d at 435.

We commend to the trial courts of this state the prudent cautionary procedures employed by the trial court in this case. First, the court streamlined the presentation of the other acts evidence so as to avoid a protracted presentation of the evidence, thereby reducing its prominence and potential for unfair prejudice.[1] Second, the trial court issued a cautionary instruction to the jury just before the other acts evidence was presented. This served to alert and focus the jury as to the limited purpose of the evidence and reduced the risk that the jury would use the evidence for an improper purpose. Then the court repeated the same instruction as part of the final instructions to the jury.

We conclude that the trial court did not erroneously exercise its discretion in admitting evidence of Murphy's confession to the ten crimes committed in 1987 that were similar to the charged offenses. The other acts evidence was properly used for the limited purpose of establishing Murphy's identity and the trial court's cautionary instruction sufficiently protected Murphy from any unfair prejudice by the jury.

---

[1] We realize that such streamlining of the evidence will not always be possible.

*By the Court.*—Judgment affirmed.