COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2081-CR**

Cir. Ct. No. **2012CF854**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

 PLAINTIFF-RESPONDENT,

 V.

WAYNE D. HERBES,

 DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: MARIA S. LAZAR, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Wayne Herbes appeals from a judgment of conviction for three counts of first-degree sexual assault of a child and an order denying his postconviction motion. The charges related to Herbes having sexual contact with his then-girlfriend's granddaughter in 2011. Herbes argues the circuit court erroneously admitted at trial other acts evidence in the form of testimony from his adoptive daughter that Herbes had molested her hundreds of times between 1976 and 1981, when she was between the ages of five and ten. Herbes also argues his trial attorney was constitutionally ineffective for failing to more thoroughly mitigate the impact of the other acts evidence. We reject Herbes' arguments and affirm.

## BACKGROUND

¶2 Herbes was charged in July 2012 with three counts of first-degree sexual assault of a child. The charges stemmed from then-eight-year-old Farah's report that Herbes, who was at the time dating Farah's grandmother Leah, had sexually assaulted her on three occasions between June and September 2011 while they were at Herbes' residence in Waukesha.[1]

¶3 Farah reported that the first incident occurred when she was lying in Herbes' bed. He started to rub her vaginal area over her underwear and told her not to tell anyone. Farah was naked during the second incident, when Herbes told her that her vagina was "pretty" and took a photograph of it with his cell phone

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we refer to the victims and their family members using pseudonyms.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

after posing her.[2] Farah stated that during the third incident, Herbes "kissed her crotch" while she was lying in Herbes' bedroom. Leah was in the shower during the first assault and was away from the premises during the others. Farah told authorities that on each occasion, she moved away from Herbes because she knew what he was doing was not right.

¶4 Herbes proceeded to a jury trial before Judge Patrick C. Haughney in March 2013. During the trial, the defense called Leah as a witness and questioned her about her sexual relationship with Herbes. Leah was permitted to testify, over the State's objection, that she did not observe any signs of sexual deviancy in Herbes while they were dating. The following day, the State sought a ruling on proposed rebuttal testimony from an undisclosed witness, Herbes' adoptive daughter Mary. The State represented that it had only recently learned of Mary's allegations that Herbes had touched her vagina "hundreds of times" between 1976 and 1981, when she was between the ages of five and ten.

¶5 The circuit court deemed the evidence proper rebuttal testimony and determined it would likely satisfy the statutory criteria for the admissibility of "other acts" evidence. It recognized, however, that the defense had "taken a certain direction" with its trial presentation, which strategy the State's trial witness threatened to derail. Accordingly, the court granted Herbes' motion for a mistrial, to which the State did not object.

¶6 Following the mistrial, the State filed a motion to admit Mary's testimony as other acts evidence. The circuit court found the evidence "relevant,

---

[2] Farah stated that Herbes touched her vaginal area while spacing out her legs.

3

highly probative and extremely material" to demonstrate Herbes' motive and intent, and it also concluded those matters outweighed the danger of unfair prejudice. After further proceedings, Herbes obtained new counsel and the matter was assigned to a new judge, the Honorable Maria S. Lazar.

¶7  Herbes filed a motion for reconsideration regarding the admissibility of the other acts evidence and a motion seeking in camera review of any therapy records pertaining to Mary's allegations of sexual abuse. The circuit court denied the motion for reconsideration but granted the motion for in camera review if the parties were able to locate Mary's therapist and confirm that she had retained any relevant records. The State located Mary's therapist, but she had not retained any records and remembered nothing more than that Mary had been a patient.

¶8  The matter was set for a second jury trial in November 2017. The State began by presenting Mary's testimony. Other prosecution witnesses included Farah, Leah, Farah's mother, the social worker that had conducted a forensic interview with Farah, and the investigating detective. Herbes testified in his own defense. The jury found Herbes guilty of all three counts, and he was sentenced to concurrent terms of twenty years' initial confinement and fifteen years' extended supervision on each count.

¶9  Herbes, by postconviction counsel, filed a WIS. STAT. § 809.30(2)(h) motion challenging the admissibility of Mary's testimony and alleging ineffective assistance of trial counsel relating to his attorney's efforts to mitigate the impact of that testimony.[3] Following at **Machner**[4] hearing, at which Herbes' trial counsel

---

[3] Herbes' motion also raised other issues we need not discuss here because he has abandoned them on appeal. For purposes of this appeal, references to Herbes' trial counsel are to his attorney at the second jury trial and related proceedings.

testified, the circuit court entered an order denying Herbes' motion. The court concluded that Mary's testimony was properly admitted at trial and that Herbes' trial counsel had provided representation "well within the norm of competence in the profession." Herbes now appeals.

## DISCUSSION

¶10 Herbes first argues the circuit court erred by admitting the other acts evidence regarding Mary. We review a decision to admit or exclude evidence for an erroneous exercise of discretion. *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. Under that standard, we will uphold the court's decision if the court examined the relevant facts, applied a proper legal standard and, using a demonstrated rational process, reached a reasonable conclusion.[5] *Id.*

¶11 Determining the admissibility of other acts evidence is a three-step process.

> Other-acts evidence is properly admissible (1) if it is offered for a permissible purpose, other than the prohibited propensity purpose, pursuant to WIS. STAT. § 904.04(2)(a)[;] (2) if it is relevant under the two relevancy requirements in WIS. STAT. § 904.01[;] and (3) if its probative value is not substantially outweighed by the risk or danger of unfair prejudice under WIS. STAT. § 904.03.

---

[4] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[5] Herbes argues this deferential standard should not apply and we should review the matter de novo because the postconviction court, according to Herbes, "did not set forth any reasons for its decision." Even the case law Herbes cites, however, states that we may conduct our own examination of the record to determine whether the facts support the court's discretionary determination. *See Connor v. Connor*, 2001 WI 49, ¶38, 243 Wis. 2d 279, 627 N.W.2d 182. And, in any event, the court's reasoning was not merely set forth in the postconviction decision, but was also articulated in the decisions covering both the State's initial request for an admissibility determination and Herbes' motion for reconsideration.

*State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399 (footnote and citation omitted). The proponent of the evidence bears the burden of establishing the first two prongs, while the party opposing the evidence must demonstrate that the evidence should be excluded under § 904.03. *Marinez*, 331 Wis. 2d 568, ¶19. In child sexual assault cases, the "greater latitude rule" applies at each step in the analysis, allowing a more liberal admission of other acts evidence. *Id.*, ¶20.

¶12     Herbes asserts the circuit court's denial of his postconviction motion was in error because the court upheld the conviction on a basis not presented to the jury, contrary to *Chiarella v. United States*, 445 U.S. 222, 236 (1980). This argument refers to the postconviction court's conclusion that Mary's testimony was offered for the proper purpose of proving modus operandi, whereas the jury was instructed that the evidence could be used only when assessing Herbes' motive or intent. We agree that Mary's testimony was offered for a proper purpose, as motive and intent are elements of the offenses that the State was required to prove. *See* WIS. STAT. §§ 948.01(5)(a); 948.02(1)(e).[6] Accordingly, the fact that the postconviction court's rationale encompassed an additional purpose is of no moment.

---

[6] Herbes appears to misapprehend the nature of the other acts inquiry in insisting that the evidence could be admitted only upon the State establishing that his motive for sexually assaulting Mary "carried over and became a causative factor" for his sexual assaults of Farah. To the contrary, "[o]ur cases establish that when the defendant's motive for an alleged sexual assault is an element of the charged crime, other crimes evidence may be offered for the purpose of establishing motive." *State v. Davidson*, 2000 WI 91, ¶57, 236 Wis. 2d 537, 613 N.W.2d 606; *see also id.*, ¶59.

Herbes also contends neither motive nor intent are at issue in this case because he denied sexually assaulting Farah. Courts have consistently rejected this reason for excluding other acts evidence. *See, e.g.*, *State v. Plymesser*, 172 Wis. 2d 583, 594-95, 493 N.W.2d 367 (1992).

¶13    Next, Herbes contends Mary's testimony had low or no probative value given the time period between Mary's alleged sexual assaults and Farah's sexual assaults. The crux of Herbes' argument appears to be that, even applying the "greater latitude rule," thirty years is too remote in time as a matter of law for other acts evidence to have any probative value. As the circuit court noted in its decision on the State's motion to admit the evidence, however, "there is no precise point which a prior act is considered too remote." *See State v. Hunt*, 2003 WI 81, ¶64, 263 Wis. 2d 1, 666 N.W.2d 771. The court considered the age of the allegations when balancing the various factors, ultimately concluding that the remoteness in time was overcome by the similarity of the conduct and ages of the victims. We cannot conclude the court erroneously exercised its discretion in reaching that conclusion, and we agree with the State's arguments in this regard.

¶14    Herbes next contends the circuit court should have excluded the other acts evidence under WIS. STAT. § 904.03. His argument appears to be that Mary's testimony had low probative value because her allegations were not corroborated by a police report or her therapist's records, but rather included her own "self-vouching" testimony that she had eventually reported the assaults. But other than citing *Syvock v. State*, 61 Wis. 2d 411, 413, 213 N.W.2d 11 (1973)— which held that a conviction for taking "indecent liberties with a child" could rest solely on the minor's uncorroborated testimony—Herbes provides no authority for the notion that corroboration was required.[7] The circuit court explicitly considered

---

[7] As the circuit court recognized, if it found Mary's allegations to be outlandish on their face, it could have excluded her testimony on that ground. This appears to be in keeping with *Syvock v. State*, 61 Wis. 2d 411, 414, 213 N.W.2d 11 (1973), which—as Herbes emphasizes— noted that a circuit court may require evidence of corroboration to sustain a conviction if the testimony of the prosecuting witness "bears upon its face evidence of its unreliability." The court here explicitly found that was not the case.

Mary's reliability when deciding the State's motion to admit her testimony, and it concluded that the lack of corroborating records went to Mary's credibility, which was within the province of the jury to assess.

¶15     Against this asserted low probative value, Herbes argues there was a substantial risk of unfair prejudice that required the exclusion of Mary's testimony. His argument regarding prejudice, however, appears to primarily focus on the order of presentation at trial and the fact that a cautionary jury instruction was not given contemporaneously with Mary's testimony.[8] In essence, Herbes argues that because the jury heard Mary's testimony prior to Farah's, and because it was only at the end of trial that the jury was instructed on the permissible uses for that testimony (i.e., motive and intent), he was deprived of a fair trial.

¶16     Objections to the order of presentation and jury instructions do not directly go to the admissibility of the other acts evidence and are more properly considered as part of Herbes' ineffective assistance of counsel claim. In terms of the substance of the other acts evidence, Herbes argues only that Mary's "repeatedly describing how she experienced 'hundreds' of assaults that were emotionally damaging … had to have shocked the jury." While Mary's testimony in this regard was undoubtedly highly prejudicial, we cannot conclude as a matter of law that it was unfairly so. As the circuit court noted, despite the lack of police or therapist records, Herbes had avenues for impeachment, including that Mary

---

[8] As Herbes notes, the postconviction court incorrectly stated that a cautionary instruction had been given at the start of trial, prior to Mary's testimony. This error does not taint our analysis of the circuit court's discretionary act of determining whether Mary's testimony was admissible.

had participated in Herbes' wedding and allowed her children to be around Herbes after the alleged assaults.

¶17 Accordingly, we conclude the circuit court properly exercised its discretion when it determined Mary's other acts testimony was admissible. The circuit court, when addressing both the State's motion and Herbes' motion for reconsideration, examined the relevant facts, applied the three-step methodology governing the admissibility of other acts evidence and the greater latitude rule, and reasonably concluded that the evidence was admissible.[9]

¶18 Herbes next argues that his trial attorney was constitutionally ineffective for failing to seek to limit Mary's testimony. He asserts his trial counsel should have sought to prevent Mary from testifying: (1) that she had been assaulted hundreds of times, (2) that she had later reported the assaults to police and to her therapist, and (3) that she experienced nightmares and claustrophobia as a result of the alleged assaults. Herbes also argues his attorney performed deficiently by neglecting to have the jury instructed on the purpose for the other acts evidence contemporaneously with Mary's testimony.

¶19 The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* We review an ineffective assistance of

---

[9] In his reply brief, Herbes appears to argue that the greater latitude rule should not apply in this case. Regardless of whether we consider this an assertion that the circuit court erroneously exercised its discretion or that his trial attorney was constitutionally ineffective, in neither instance would we reverse based on this apparently novel argument.

9

counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.* If the defendant fails to establish either prong, we need not address the other. *Id.*

¶20 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶21 We first address Herbes' suggestion that his trial counsel should have further sought to exclude portions of Mary's testimony regarding the number of alleged assaults, her reporting of the same, and the trauma she experienced as a result of them. Herbes' trial counsel testified at the *Machner* hearing that he believed the motions he filed (including motions for reconsideration and for in camera review of any therapy records) were "all-encompassing of prejudicial issues." Trial counsel noted that the admissibility of the other acts evidence "had been ruled upon several times," and he further testified they had hired an investigator to attempt to discredit Mary only to find that her ex-husband supported her testimony that she had eventually reported the sexual assaults. In light of these matters, trial counsel testified, "Mr. Herbes and I decided … we did not want, for lack of a better term, to beat a dead horse with [Mary], that we wanted to get her on and get her off [the witness stand] and move along with the

trial." The record shows Herbes' trial counsel engaged in vigorous cross-examination of Mary at trial.

¶22 We conclude Herbes' trial counsel was not deficient for failing to file yet another motion seeking to exclude portions of Mary's testimony. Trial counsel reasonably concluded that such a motion would be no more successful than prior attempts to have the evidence excluded. Moreover, on appeal Herbes attempts to substitute his own credibility determination for the jury's by suggesting that Mary's calculation of the number of assaults was "clearly … her personal opinions, [which were] unexplained (and unverified) estimates at most." Similarly, he offers no basis—except WIS. STAT. § 904.03—to exclude Mary's testimony that she had previously reported the incidents and that the sexual assaults caused her considerable trauma. But at least two judges had already weighed the prejudicial effect of her testimony under § 904.03 and deemed it admissible.

¶23 We also conclude trial counsel was not deficient for failing to seek a cautionary instruction at the inception of Mary's testimony. The other acts instruction was requested by trial counsel and given at the close of evidence. In this instance, Herbes contends trial counsel was required to seek an additional instruction contemporaneously with Mary's testimony. As authority, he relies on the "best practices" concerning other acts evidence articulated in *State v. Murphy*, 188 Wis. 2d 508, 523, 524 N.W.2d 924 (Ct. App. 1994).

¶24 The "prudent cautionary procedures" articulated in *Murphy*, however, fall far short of a mandate. In closing argument in this case, trial counsel again emphasized the "very limited reason" for which the jury could use Mary's

11

testimony. Under these circumstances, we cannot conclude trial counsel was deficient for failing to request an additional jury instruction at the start of the trial.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.